No. 18-2535

---

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

Christian K. Narkiewicz-Laine,

   Plaintiff-Appellant,

   v.

Kevin C. Doyle, Pamela Doyle,
John T. Doyle Trust A, John T.
Doyle Trust B, And John Does 1-5,

   Defendants-Appellees.

---

On Appeal from the United States District Court
For the Northern District of Illinois, Western Division
Case No. 11-cv-1826
Hon. Frederick J. Kapala, Judge Presiding

---

# SEPARATE APPENDIX OF PLAINTIFF-APPELLANT,
# CHRISTIAN K. NARKIEWICZ-LAINE

---

Susan G. Feibus
**Law Offices Of Susan G. Feibus**
105 West Adams St., 35th floor
Chicago, IL 60603
Telephone: (312) 637-9637

Michael P. Persoon
**Despres, Schwartz, and
Geoghegan, Ltd.**
77 W. Washington St., Suite 711
Chicago, IL 60602
Telephone: (312) 372-2511

*Attorneys for Plaintiff-Appellant
Christian K. Narkiewicz-Laine*

**No. 18 – 2535**

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| Christian K. Narkiewicz-Laine, | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| Plaintiff-Appellant, | ) | District of Illinois, Western Division |
| | ) | |
| v. | ) | No. 11- CV- 1826 |
| | ) | |
| Kevin Doyle, et al., | ) | District Judge Frederick J. Kapala |
| | ) | |
| Defendant-Appellees. | ) | |

## TABLE OF CONTENTS TO PLAINTIFF-APPELLANT'S SEPARATE APPENDIX

Circuit Rule 30(d) Statement ............................................................................... i

Certificate of Service ........................................................................................ ii

Christian K. Narkiewicz-Laine's Revised Proposed Verdict Form, filed April 14, 2017 [Dkt. 243-19]............................................................................................. App. 1

Memorandum in Support of Plaintiff's Motion *In Limine* No. 1, filed April 14, 2017 [Dkt. 243-23]............................................................................................. App. 8

District Court order, dated September 13, 2017 [Dkt. 251] ...................................... App. 17

Plaintiff's Trial Exhibit #36 ............................................................................ App. 25

Plaintiff's Trial Exhibit #38 ............................................................................ App. 32

Trial Transcript Excerpt [Pgs. 1177-1180] ......................................................... App. 46

Trial Transcript Excerpt [Pgs. 1237-1244] ......................................................... App. 47

Signed Verdict Form, dated October 3, 2017 ...................................................... App. 49

Jury Instructions Nos. 42-45, filed October 4, 2017 [Dkt 272] ................................. App. 53

District Court order, dated December 22, 2017 [Dkt. 285] ...................................... App. 58

District Court order, dated June 14, 2018 [Dkt. 308] ............................................ App. 59

<u>**CIRCUIT RULE 30(d) STATEMENT**</u>

Pursuant to Circuit Rule 30(d), counsel for Plaintiff-Appellant hereby certifies that all materials required by Circuit Rule 30(a) are included in the Short Appendix bound with its brief, and that all materials required by Circuit Rule 30(b) are included in this separately-bound Appendix.

Dated: December 6, 2018           By:     /s/ Susan G. Feibus
                                        One of Plaintiff's Attorneys

Susan  G. Feibus
**LAW OFFICES OF SUSAN G. FEIBUS**
105 West Adams St. | 35th floor | Chicago, IL 60603
312-637-9637 (office)
susan@feibuslaw.com


Michael P. Persoon
**Despres, Schwartz & Geoghegan Ltd.**
77 W. Washington St., Suite 711
Chicago, IL 60602
mpersoon@dsgchicago.com
(312) 372-2511

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 6, 2018, I electronically filed the Appendix of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF filing system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 6, 2018

By:    /s/ Susan G. Feibus
             One of Plaintiff's Attorneys

Susan G. Feibus
**LAW OFFICES OF SUSAN G. FEIBUS**
105 West Adams St. | 35th floor | Chicago, IL 60603
312-637-9637 (office)
susan@feibuslaw.com


Michael P. Persoon
**Despres, Schwartz & Geoghegan Ltd.**
77 W. Washington St., Suite 711
Chicago, IL 60602
mpersoon@dsgchicago.com
(312) 372-2511

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWICZ-LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 1826 |
| | ) | |
| KEVIN C. DOYLE, PAMELA DOYLE, | ) | The Honorable Frederick J. Kapala |
| JOHN T. DOYLE TRUST A, JOHN T. | ) | |
| DOYLE TRUST B, and JOHN DOES 1-5, | ) | Magistrate Judge Iain Johnston |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REVISED PROPOSED VERDICT FORM**

Note:   See authorities listed at the end of this verdict form to support
Plaintiff's position that awards of statutory damages under the Copyright
Act and actual damages under state law do not constitute an impermissible
double recovery.

**App. 1**

## COUNT I -- PLAINTIFF'S VISUAL ARTISTS RIGHT ACT CLAIM

1.     On Plaintiff's claim against Defendants for violation of the **Visual Artists Rights Act ("VARA")**, we find for: **[check one].**

        Plaintiff  _____     OR   Defendants  _____

        **If you found for Plaintiff against Defendants on Count I, you must answer both Question 2 and Question 3.**

        **If you found for Defendants against Plaintiff on Count I, you must go directly to Question 4.**

2.     What amount of actual damages do you award Plaintiff for violation of VARA?

        Actual Damages for VARA property destroyed by Defendants:

        $_____

3.     As an alternative to actual damages, the Plaintiff may elect to recover statutory damages.  The amount of statutory damages must be between $750 and $30,000 for each work of visual art of recognized stature that you found to be destroyed.  However, if you find that Defendants willfully infringed Plaintiff's rights under VARA, then you may, but are not required to, increase the statutory damage award to a sum as high as $150,000 per work of visual art.  If you find that Defendants innocently infringed Plaintiff's rights under VARA, then you may, but are not required to, reduce the statutory damage award to a sum as low as $200 per work of visual art.

In determining an amount of statutory damages, you must answer questions 3.(a), (b), (c), (d) and (e), below.

        (a)     Did Defendants willfully violate Plaintiff's rights under VARA?
                YES  ____     OR     NO ____

        (b)     Did Defendants innocently violate Plaintiff's rights under VARA?
                YES  ____     OR     NO ____

        (c)     How many works of visual art do you find were destroyed?  _____

        (d)     What is the total amount of statutory damages you award to Plaintiff for the works of visual art destroyed?  $_____

**App. 2**

(e)     If you answered YES to question 3(a), what is the total amount of the *increase* in the statutory damages, if any, that you included in the award set forth in question (d) above?   $_____

## COUNT III -- PLAINTIFF'S TRESPASS CLAIM    (There is no Count II)

**4.**     On Plaintiff's claim against Defendants for **trespass,** we find for: **[check one].**

Plaintiff  _____     OR   Defendants   _____

## COUNT IV -- PLAINTIFF'S CONVERSION CLAIM

**5.**     On Plaintiff's claim against Defendants for **conversion,** we find for: **[check one].**

Plaintiff  _____     OR   Defendants   _____

## COUNT V -- PLAINTIFF'S NEGLIGENCE CLAIM

**6.**     On Plaintiff's claim against Defendants for **negligence,** we find for: **[check one].**

Plaintiff  _____     OR   Defendants   _____

**7.**     If you found in favor of the Plaintiff against the Defendants on any of the Plaintiff's claims for trespass, conversion or negligence, state the amount of actual damages you award the Plaintiff against the Defendants:

$_____

**Proceed to next page.**

**PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES – Answer only if you found in favor of Plaintiff on Counts III, IV, or V**

8.   If you found in favor of Plaintiff and against the John T. Doyle Trust A & B on one of more of the claims for trespass, conversion, or negligence, you should also answer the following questions:

   A. Did the acts of the John T. Doyle Trust A & B, which you have found to be trespass, conversion, or negligence, meet the requirements for awarding punitive damages as explained in these instructions?

   YES _____          NO _____

   **If you answered YES to question 8A, proceed to question 8B.**

   **If you answered NO to question 8A, proceed to question 9.**

   B. Do you find that Plaintiff should be awarded punitive damages from the John T. Doyle Trust A & B?

   YES _____          NO \_\_\_\_\_

   **If you answered YES to question 8B, proceed to question 8C.**

   **If you answered NO to question 8B, proceed to question 9.**

   C. What amount of punitive damages should be awarded to Plaintiff from the John T. Doyle Trust A & B?

   $_____

**Proceed to next page.**

**App. 4**

**9.** If you found in favor of Plaintiff and against Kevin Doyle on one of more of the claims for trespass, conversion, or negligence, you should also answer the following questions:

A. Did the acts of the Kevin Doyle, which you have found to be trespass, conversion, or negligence, meet the requirements for awarding punitive damages as explained in these instructions?

YES _____ NO _____

**If you answered YES to question 9A, proceed to question 9B.**

**If you answered NO to question 9A, proceed to question 10.**

B. Do you find that Plaintiff should be awarded punitive damages from Kevin Doyle?

YES _____ NO _____

**If you answered YES to question 9B, proceed to question 9C.**

**If you answered NO to question 9B, proceed to question 10.**

C. What amount of punitive damages should be awarded to Plaintiff from Kevin Doyle?

$_____

**Proceed to next page.**

**App. 5**

10. If you found in favor of Plaintiff and against the Pamela Doyle on one of more of the claims for trespass, conversion, or negligence, you should also answer the following questions:

A. Did the acts of the Pamela Doyle, which you have found to be trespass, conversion, or negligence, meet the requirements for awarding punitive damages as explained in these instructions?

YES _____          NO _____

**If you answered YES to question 10A, proceed to question 10B.**

**If you answered NO to question 10A, proceed to the signature page.**

B. Do you find that Plaintiff should be awarded punitive damages from Pamela Doyle?

YES _____          NO \_\_\_\_\_

**If you answered YES to question 10B, proceed to question 10C.**

**If you answered NO to question 10B, proceed to the signature page.**

C. What amount of punitive damages should be awarded to Plaintiff from Pamela Doyle?

$_____

Authorities:

**Awards of statutory damages under the Copyright Act and actual damages for a different cause of action is not double recovery.**

*Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F. 3d 1007 (9th Cir. 1994)(Award of both statutory damages under Copyright Act and profits under Lanham Act was not impermissible double recovery against infringer by company which marketed home video games; although selling video game cartridges which included copyrighted games and were marketed under company's trademark was one act, infringer committed two wrongs, and company recovered statutory damages under Copyright Act but recovered actual damages under Lanham Act;

**App. 6**

*Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009)(stating in dicta, "It is true that if there are separate violations, the fact that they are charged in the same case does not preclude an award of compensatory damages for some of the violations, and statutory damages for others as to which compensatory damages can't be ascertained or are too slight to warrant the expense of determining but deterrence would be served by a money judgment. Cf. *Nintendo of America, Inc. v. Dragon Pacific Int'l,* 40 F.3d 1007, 1010–11 (9th Cir.1994)";

*Microsoft Corp. v. Evans*, 2007 WL 3034661 (E.D. Cal. 2007), report and recommendation adopted, 2007 WL 4209368 (E.D. Cal. 2007) ("A separate award of statutory damages under both the Copyright Act and the Lanham Act was appropriate when a single act violated both statutes because two separate wrongs have been committed");

*Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005–06 (9th Cir. 2008) "We have held that one act by a defendant may create two legal harms; where the statutes forbidding the act were enacted for different purposes, and where they prescribe different types of damages, there is no double recovery."

*Lifted Research Group, Inc. v. Behdad, Inc.*, 2010 WL 2662277, at *3 (D.D.C. June 30, 2010)("The majority of courts that have considered this question outside of this jurisdiction, however, have concluded that awarding damages under both the Lanham and Copyright Acts does not constitute double recovery," collecting cases).

*G & G Closed Cir. Events, LLC v. Thao Xuan Vo*, 2012 WL 3638682, at *3 (N.D. Cal. Aug. 22, 2012)(conversion damages and statutory damages for unlawful interception of a telecast is not double recovery, citing cases).

### Signature Page

**This concludes the verdict form.**

Foreperson:      _____

_____

_____

_____

_____

_____

_____

Dated: _____

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWICZ-LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 1826 |
| | ) | |
| KEVIN C. DOYLE, PAMELA DOYLE, | ) | The Honorable Frederick J. Kapala |
| JOHN T. DOYLE TRUST A, JOHN T. | ) | |
| DOYLE TRUST B, and JOHN DOES 1-5, | ) | Magistrate Judge Iain Johnston |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINIE NO. 1**

Plaintiff, through his counsel, Davis McGrath LLC, and pursuant to Federal Rules of

Evidence 403, 608, and 609, respectfully submit this Memorandum in Support of Plaintiff's

Motion in Limine to bar Defendants from presenting any evidence referring or relating to

Plaintiff's prior conviction.

**INTRODUCTION**

On June 25, 2002, Plaintiff was indicted on three counts by a Grand Jury for violations of

Title 18, United States Code, Sections 2, 1001, and 1341. Indictment, *United States v. Christian*

*Narkiewicz Lane*, 1:02-cr-00627 (June 25, 2002). Counts 1 and 2 for mail fraud and offenses

against the United States were dismissed. Judgment, *United States v. Christian Narkiewicz Lane*,

1:02-cr-00627 (June 9, 2003). On or around June 9, 2003, Plaintiff plead guilty to Count 3 for

making false statements to a Special Agent of the Federal Bureau of Investigation (FBI) under 18

U.S.C. §1001(a)(2). *Id.*

Plaintiff was sentenced to three months incarceration, commencing on August 11, 2003.

*Id.* Plaintiff was released from confinement on November 9, 2003 and his supervised release

**App. 8**

terminated on February 7, 2005. Docket No. 39, *United States v. Christian Narkiewicz Lane*, 1:02-cr-00627 (Feb. 7, 2005).

In their Response to Plaintiff's Motion for Partial Summary Judgment, Defendant's mischaracterized this conviction as obstruction of justice based on acts of fraud and deception. Defendants' argument implies that the conviction is related to art and improperly alludes to the two indictments on which Plaintiff was not convicted. (Docket 77, pp. 15-16).

Again, in their motion to bar Plaintiff's expert Bardo, Defendants' mischaracterized this conviction as "involving art fraud" and implying that a Google search would provide adequate information regarding the conviction. (Dkt. No. 142, p 7). In fact, a Google search provides misleading information as most search results related to the FBI investigation refer to the 2001 Grand Jury but do little to distinguish between the indictments and conviction.

In December 2011, Plaintiff was charged with "theft-movable property" in Grant County Wisconsin. The penalty is a forfeiture or fine because it is not considered a criminal offense. Defendants listed this Wisconsin forfeiture in their list of proposed exhibits for trial.

Defendants have indicated that they will seek to introduce evidence of Plaintiff's prior conviction and forfeiture. Defendants' counsel has mentioned the prior conviction at several court appearances. Plaintiff's prior conviction and incarceration should not be admitted at trial because such evidence is remote in time and its probative value is substantially outweighed by the danger of unfair prejudice. Defendants should be barred from presenting evidence of, or even mentioning, Plaintiff's 2003 conviction or incarceration, or the 2011 Wisconsin forfeiture.

## ARUGMENT

Federal Rule of Evidence 609(a) provides for the admission of prior convictions to attack the character of a witness. Generally, convictions for which a dishonest act or false statement are

2

elements of the underlying crime will be admissible. Fed. R. Evid. 609(a)(2). However, if more than ten years have passed since the release from confinement, the prior conviction is only admissible if the probative value *substantially* outweighs the prejudicial effect. Fed. R. Evid. 609(b) (emphasis added). Such impeachment evidence should only be permitted in "rare and exceptional circumstances". *United States v. Alexander*, 2014 WL 64124 (N.D. Ill. Jan. 8, 2014) citing *United States v. Rogers*, 542 F.3d 197 (7th Cir. 2008). This heightened standard is "dramatically skewed in favor of excluding the conviction evidence." *Jones v. Walters*, 2016 WL 1756908 (N.D. Ill. Apr. 29, 2010) citing *Horvath v. W. Bend Mut. Ins. Co.,* 534 Fed. App's 552 (7th Cir. 2013).

I.      **Plaintiff's prior conviction is inadmissible because Plaintiff was released from confinement over ten years ago**

Evidence of Plaintiff's prior conviction should not be admitted because it is subject to the time limitations of Federal Rule of Evidence 609. The ten year rule starts from the date of conviction or release from confinement, whichever is later. Fed. R. Evid. 609(b). Post-confinement probation or periods of supervision are not considered confinement. *United States v. Rucker*, 738 F.3d 878 (7th Cir. 2013) citing *United States v. Rogers*, 542 F. 3d 197 (7th Cir. 2008).

Plaintiff was released from confinement over thirteen years ago on November 9, 2003. Even if Plaintiff's supervised release was considered confinement it would still place the conviction beyond the ten year rule as his supervision ended on February 7, 2005.

II.     **Plaintiff's prior conviction is inadmissible because the danger of unfair prejudice substantially outweighs any probative value**

Evidence of Plaintiff's prior conviction does not meet the heightened standard under 609(b) because the danger of unfair prejudice substantially outweighs any probative value. Rule

3

609(b) calls for an asymmetrical balancing test, the probative value of the prior conviction must *substantially* outweigh its prejudicial effect. *United States v. Rogers*, 542 F. 3d 197 (7th Cir. 2008). Courts consider several factors in determining whether a conviction's probative value outweighs its prejudicial effect, including, "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past conviction and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United State v. Montgomery*, 390F.3d 1013 (7th Cir. 2013) citing *United States v. Mahone*, 537 F.2d 922 (7th Cir. 1976). Although not all of these factors apply in civil cases, the general concerns are informative. *Buchanan v. McCann*, 08 C 7063, 2012 WL 1987917 (N.D. Ill. June 4, 2012). The first two factors support the exclusion of Plaintiff's conviction because any impeachment value is diminished by its remoteness. "[C]onvictions over ten years old generally do not have much probative value." *See* Fed. R. Evid. 609, Advisory Committee Notes. Even when a conviction involves dishonesty or false statements, the age of the conviction decreases its probative value. *United States v. McCarroll*, 1996 WL 99442 (N.D. Ill. Mar. 5, 1996) (finding the prejudicial effect of twelve year old convictions for mail fraud and forgery substantially outweighed any probative value); *Jones v. Walters*, 12-CV-5283, 2016 WL 1756908 (N.D. Ill. Apr. 29, 2016) (evidence that Plaintiff had pled guilty to intentionally defrauding someone and knowingly using false documents had limited probative value due its age). In *United States v. Lockwood*, the court excluded defendant's prior conviction because it did not involve any 'exceptional circumstances' to warrant admission. *United States v. Lockwood*, 12-CR-20070, 2013 WL 3964779 (C.D. Ill. July 31, 2013). The court reasoned that defendant's 12 ½ year old conviction for obstruction of justice is not highly probative of defendant's credibility because the obstruction "did not involve court

4

testimony or a statement made under oath but rather involving providing false information after an accident." *Id.* (citing *United States v. Gray*, 410 F.3d 338, 346 (7th Cir. 2005) (district court did not allow witness to be impeached with 12 year old perjury conviction that involved statement on an application, not court testimony)).

The subsequent history of the Plaintiff also supports exclusion of the conviction. In *THK Am., Inc. v. NSK, Ltd.*, the court found that the witness' subsequent history overwhelming overcame the fact that the conviction was only two years beyond the Rule. *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 570–71 (N.D. Ill. 1996) (taking into account the witness' awards received and appropriate behavior since the conviction).

Plaintiff pled guilty to making false statements to an FBI agent. He was not under oath when he made the statements and there was no trial testimony. Plaintiff's remaining charges were dismissed. The conviction was remote enough in time to diminish its impeachment or probative value. Similar to arrests, without more, indictments are inadmissible as impeachment evidence as they are distinct from convictions. *Price v. Thurmer*, 514 F.3d 729 (7th Cir. 2008). Plaintiff was not convicted or incarcerated for events related to the other counts in his indictment.

The third factor is not relevant here because the Plaintiff is not being charged with a crime. The similarity between the charged crime and the prior conviction favors exclusion. *THK America, Inc. v. NSK, Ltd.*, 917 F.Supp. 563 (N.D. Ill. Jan. 17, 1996) (citing *United States v. Shapiro,* 565 F.2d 479 (7th Cir. 1977) (finding that if the impeachment credibility is accomplished with evidence of a past similar crime there is a danger of unfair prejudice)). However, comparing the conduct involved in the conviction and Plaintiff's conduct under attack here, they are similar enough to favor exclusion and admission would create an improper

**App. 12**

inference of propensity. Plaintiff's conviction was for making false statements to an FBI agent about altering invoices submitted for an exhibit at the Chicago Athenaeum Museum. Plaintiff claims to have sent a rent check for 2009 but Defendants' state it was never received and claim that is evidence of his intent to abandon. Using evidence that Plaintiff made false statements about invoices should not be used as evidence to imply that Plaintiff lied about sending rent.

The fourth and fifth factors support the exclusion of Plaintiff's conviction because while the credibility of a witness is important Plaintiff's credibility is not a critical aspect of the issues. The issue of a witness' credibility alone does not justify the admission of a conviction over ten years. *THK America, Inc. v. NSK*, Ltd., 917 F.Supp. 563 (N.D. Ill. Jan. 17, 1996). It is within the court's discretion to exclude a remote conviction where the credibility of a witness is not a dispositive factor at trial. *United States v. McCarroll*, 1996 WL 99442 (N.D. Ill. Mar. 5, 1996). Here, many of the key facts of the dispute are uncontested. See Statement of Uncontested Facts.

The probative value of a conviction is lessened when the jury has the opportunity to consider and weigh other sources. *Miller v. Illinois Dept. of Transp.*, 07-CV-677-WDS, 2012 WL 2922690 (S.D. Ill. July 17, 2012) (finding that little can be concluded today based on an old conviction, especially if that conviction was the witnesses only crime and jury can determine credibility in other means); *Untied States* v. Rucker, 738 F.3d 878, 884 (7th Cir. 2013) (finding remote theft conviction held little probative value, if any, where proponent of its use mischaracterized its probative value and witness was impeached with other recent convictions) . In this case, the jury will not rely on Plaintiff's testimony alone. Both parties will have witnesses and the jury will be able to observe the witnesses' demeanor and reach conclusions about credibility.

The potential for misleading the jury and unfair prejudice outweighs any probative value under Federal Rule of Evidence 403.  A "felon is entitled to the same consideration of the merits of his case as a litigant who has never been convicted of a felony, and that entitlement is undermined by allowing a party to a lawsuit to draw attention to the fact that his opponent is a convicted felon." *Schmude v. Tricam Industries, Inc.,* 556 F. 3d 624, 627 (7th Cir. 2009).  The Defendants should not be allowed to "harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issues in the present case to the witness's conviction in a previous case." *United States v. Williams-Ogletree,* 11 CR 203-3, 2013 WL 66207 (N.D. Ill. 2013). The Defendants have shown a propensity for mischaracterizing Plaintiff's prior conviction and alluding to the indictments on which Plaintiff was not convicted.  (See p. 2, *supra*).  The danger of Defendant's mischaracterizations of the conviction and difficulty in differentiating between the conviction and indictments will unfairly prejudice the Plaintiff and mislead or confuse the jury.  It will also divert the jury's attention away from the real issues in the case, namely whether Defendants' wrongfully destroyed Plaintiff's personal property.

Even a single reference to the prior conviction would divert the focus of the trial from what it should be, namely, a landlord-tenant dispute involving destruction of Plaintiff's property. Allowing the prior conviction evidence would necessitate time consuming explanations of the events of 2003, objections to mischaracterization, testimony about the events, all of which is irrelevant to the real issues in the case and would taint Plaintiff in the eyes of the jury.  For these reasons, any evidence or mention of the 2003 conviction should be barred under Fed. R. Evid. 609(b) and 403.

III.     **Plaintiff's prior forfeiture is inadmissible because evidence of a specific instance is improper character evidence**

7

App. 14

Federal Rule of Evidence 608(b) states that "except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attach or support the witness's character for truthfulness." Specific instances of conduct are allowed to be inquired into on cross examination if they are probative of the witness's character for truthfulness. Fed. R. Evid. 608(b).

### a. Plaintiff's prior forfeiture is not a criminal conviction falling under the exception to Federal Rule of Evidence 609

Pursuant to the rules set forth above, the Wisconsin forfeiture conviction does not meet the threshold of admissibility under 609(a). It is not a crime punishable by death or imprisonment for more than a year and it is not a crime involving dishonesty. In fact, it is not considered a crime at all. The Wisconsin conviction shows that its severity is forfeiture. According to Wisconsin courts, this is equivalent to an ordinance violation in which forfeiture of money is the punishment. *See* Court Terms, available at https://wcca.wicourts.gov/index.xsl.

### b. Plaintiff's prior forfeiture is inadmissible on cross-examination because it is not probative of Plaintiff's character for truthfulness.

Evidence of Plaintiff's Wisconsin forfeiture should not be allowed inquiry on cross-examination because theft of this degree does not go to truthfulness. *Harris v. Wal-Mart Stores, Inc.,* 630 F. Supp. 2d 954 (C.D. Ill. 2009); *Arellano v. Etan Industries, Inc.,* 97 C 8512, 1998 WL 417599 (N.D. Ill. 1998) (finding "petty shoplifting does not in and of itself qualify as a crime of dishonesty").

Additionally, such evidence, even if considered relevant, should be excluded under Federal Rule of Evidence 403 as its potential for unfair prejudice far outweighs any possible probative value.

<u>CONCLUSION</u>

8

**App. 15**

Defendants will seek to introduce evidence of Plaintiff's prior convictions. Plaintiff's conviction and incarceration should not be admitted at trial because such evidence is remote and its probative value does not substantially outweigh the danger of unfair prejudice.

Respectfully submitted,

By:  /s/ William T. McGrath
     One of his attorneys

| | |
|---|---|
| James H. Wolf | William T. McGrath |
| James M. Wolf | DAVIS McGRATH LLC |
| WOLF & TENNANT | 125 South Wacker Drive, Suite 1700 |
| 33 N. Dearborn, Suite 800 | Chicago, IL 60606 |
| Chicago, IL 60602 | 312-332-3033 |
| 312-739-0300 | |

**App. 16**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Christian K. Narkiewicz-Laine, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 11 C 1826 |
| | ) | |
| Kevin C. Doyle, et al., | ) | |
| | ) | |
| *Defendants.* | ) | Judge Frederick J. Kapala |

## ORDER

Enter order on motions in limine.

## STATEMENT

Plaintiff, Christian K. Narkiewicz-Laine, has brought several claims against defendants, Kevin C. Doyle, Pamela Doyle, John T. Doyle Trust A, and John T. Doyle Trust B, based primarily on the removal and destruction of plaintiff's art work in July 2010 from the second floor of defendants' building in Galena, Illinois, which plaintiff had rented pursuant to an oral lease entered into in 2004. In particular, plaintiff alleges a violation of his right of integrity under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A(a)(3)(B), based on the destruction of one or more works of visual art of purported recognized stature that were stored on the premises (Count I), as well as state-law claims for trespass, conversion, and negligence (Counts III-V).[1] Currently before the court are four motions in limine filed by plaintiff and four motions in limine filed by defendants in anticipation of the upcoming trial in this matter.

A district court has the authority to rule on a motion in limine before trial as part of its inherent authority to manage its trials. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984). Evidence should be excluded under an order in limine only where it is clearly inadmissible for all purposes, otherwise evidentiary rulings should be deferred until trial. Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan Inc., 608 F. Supp. 2d 1018, 1021 (N.D. Ill. 2009). The party moving to exclude evidence in limine has the burden of establishing that the evidence is not admissible for any purpose. Id. Denial of a motion in limine seeking the exclusion of evidence does not mean the evidence will necessarily be admitted at trial but, rather, indicates that the court could not determine the issue in advance of trial. Euroholdings Capital & Inv. Corp. v. Harris Trust & Savings Bank, 602 F. Supp. 2d 928, 934 (N.D. Ill. 2009). Therefore, a ruling in limine is not final and is subject to change as the case unfolds. Id. at 935.

---

[1]Plaintiff is no longer pursing the VARA claim raised in Count II of the second amended complaint.

**App. 17**

**Plaintiff's Motion in Limine #1**

In his first motion in limine, plaintiff seeks to exclude pursuant to Federal Rule of Evidence 609 any evidence of (1) his 2003 federal conviction for making false statements to an agent of the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001(a)(2); and (2) his 2011 conviction for "theft-movable property" in Grant County, Wisconsin. In particular, plaintiff argues that his 2003 conviction for making false statements should be excluded pursuant to Rule 609(b) because that conviction is more than 10 years old, and he contends that the 2011 theft should be excluded because it is "not considered a crime at all" under Wisconsin law.

In general, under Rule 609(a), a witness can be impeached by evidence of a criminal conviction "for any crime . . . if the court can readily determine that establishing the elements of the crime required proving–or the witness's admitting–a dishonest act or false statement." Fed. R. Evid. 609(a)(2). There is no dispute that plaintiff's 2003 conviction for making false statements meets this standard, and normally that type of evidence "must be admitted" under Rule 609(a)(2). Id. However, Rule 609(b) places a limitation on using such evidence if "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). Under those circumstances, "[e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Id. By the time this case goes to trial, plaintiff's 2003 conviction, which resulted in a 3-month sentence of imprisonment, will be more than 10 years old. See Jones v. Walters, No. 12-CV-5283, 2016 WL 1756908, at *3 (N.D. Ill. Apr. 29, 2016) ("[T]he Rule 609(b) ten-year clock starts to run on the later of [the witness's] date of conviction or release from physical confinement, and ends when the trial starts."). Accordingly, the court must analyze the question of admissibility of plaintiff's 2003 conviction under the standards of Rule 609(b).

The Seventh Circuit has stated that "impeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances." United States v. Rogers, 542 F.3d 197, 201 (7th Cir. 2008); see also Horvath v. W. Bend Mut. Ins. Co., 534 F. App'x 552, 553 (7th Cir. 2013) ("The language of Rule 609(b) . . . is dramatically skewed in favor of excluding the conviction evidence . . . ."). That being said, "Rule 609(b) is not an absolute bar to the admission of a prior conviction that is more than ten years old," Rogers, 542 F.3d at 201, and the Seventh Circuit "will uphold a district court's decision to admit a conviction over ten years old as long as the record shows that the district court thoughtfully analyzed the facts and properly weighed the probative value of the evidence against its prejudicial effect," United States v. Redditt, 381 F.3d 597, 601 (7th Cir. 2004).

The Seventh Circuit has articulated a five-part test to guide the district court in determining whether the probative value of a conviction outweighs its prejudicial effect. United States v. Montgomery, 390 F.3d 1013, 1015 (7th Cir. 2004). The court should consider: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." Id. "While not all of those factors will apply in civil cases, the same general concerns may illuminate the court's analysis." Buchanan v. McCann, No. 08 C 7063, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012).

2

**App. 18**

Here, an analysis of the five <u>Montgomery</u> factors demonstrates that the probative value of plaintiff's 2003 conviction substantially outweighs any potential prejudicial effect. As to the first factor, the impeachment value of the prior crime is high because plaintiff's offense involved making false statements. <u>See</u> <u>Montgomery</u>, 390 F.3d at 1015 (noting that impeachment value is greater if the prior conviction implicates the witness's truthfulness). Indeed, the structure of Rule 609 itself shows that crimes involving dishonesty have a greater impeachment value than other felony offenses, as their admission is not conditioned on a Rule 403 balancing test. <u>See</u> Fed. R. Evid. 609(a); <u>see also</u> <u>United States v. Wilson</u>, 985 F.2d 348, 351 (7th Cir. 1993) ("When admitting evidence of prior convictions involving dishonesty under Rule 609(a)(2) to impeach, the district court is not required to balance the prejudicial impact of the evidence against its probative value."). Accordingly, this factor favors admission of plaintiff's 2003 conviction.

The second factor is not as clear cut. On the one hand, plaintiff's conviction for making false statements is approximately 14 years old, and generally speaking "the probative value of a prior conviction on the issue of credibility tends to decrease with the passage of time." <u>United States v. Shapiro</u>, 565 F.2d 479, 481 (7th Cir. 1977). The timing issue is somewhat unusual in this case, however. As noted above, Rule 609 would have mandated the admission of plaintiff's prior conviction if this case, which was filed in early 2011 based on events that took place in 2010, would have proceeded to trial in a more timely fashion. Although the court recognizes that the 10-year time period technically does not end until the start of trial, it is somewhat odd that plaintiff could potentially obtain an evidentiary advantage simply because his case has taken more than six years to get to trial. Moreover, the second factor also requires the court to consider the witness's subsequent history and, although there is some dispute as to the nature of the offense, the court knows at a minimum that plaintiff was adjudicated on some sort of theft offense in 2011. It is evident that plaintiff has not led a completely law-abiding life after his release from federal custody. If plaintiff were to present evidence to support his contention that this was "not considered a crime at all," the court would revisit this issue, but as it stands now, this factor weighs in favor of admitting evidence of his 2003 conviction.

The third factor, which looks to the similarity between the past crime and the charged crime, is arguably not even relevant in this case. <u>See</u> <u>Owens v. Ellison</u>, No. 13-CV-7568, 2017 WL 1151046, at *3 (N.D. Ill. Mar. 28, 2017) ("The third factor is not relevant in civil cases."); <u>Ellis v. Country Club Hills</u>, No. 06 C 1895, 2011 WL 6001148, at *4 (N.D. Ill. Dec. 1, 2011) ("Because Ellis is the plaintiff and not the defendant in this case, there is less concern that the jury is likely to misuse the evidence for purposes other than impeachment."). In any event, plaintiff's 2003 conviction was based on plaintiff fraudulently increasing the amounts reflected on legitimate invoices, or creating new invoices reflecting fraudulent amounts he falsely claimed were billed by third-party vendors, in order to seek reimbursement of approximately $54,263 from the Royal Danish Consulate in connection with a "Denmark Through Design" exhibition that was being held at plaintiff's museum. The actual offense to which plaintiff plead guilty was based on plaintiff's decision to lie to the FBI about those fraudulent activities once they were discovered. In contrast, the current civil case may involve a question as to whether plaintiff paid his rent for 2009, as well as an argument from defendants that plaintiff could be misrepresenting the contents and/or value of his artwork that was stored in defendant's building. Accordingly, the court finds that the similarity between these two cases is low, such that the risk of the jury using the evidence of plaintiff's prior

3

conviction for something other than impeachment is also low. Moreover, any risk associated with admitting this evidence can be mitigated by an appropriate limiting instruction. In his motion in limine, plaintiff appears to argue that it would be unfair to allow evidence of his conviction for making false statements "to imply that Plaintiff lied about sending rent," but that is essentially the purpose of impeachment evidence and there would be nothing improper about the jury considering that evidence for purposes of evaluating plaintiff's credibility. Accordingly, to the extent the third factor is even considered in the analysis, it weighs in favor or admitting plaintiff's 2003 conviction.

Finally, as to the fourth and fifth factors, which are closely related in this case, the court finds that these factors strongly favor admission of the evidence. In this case, plaintiff's testimony will either be the only source of certain facts, or his testimony will be contradicted by other witnesses. Under either scenario, plaintiff's testimony will be very important, and a determination of his credibility will be critical for the jury to make in order to properly evaluate this case. Accordingly, these factors both strongly favor admission of the evidence of plaintiff's prior conviction. See Montgomery, 390 F.3d at 1016 ("[E]ven if some of the . . . factors were neutral or favored exclusion, the central role of Montgomery's testimony and the importance of his credibility strongly favored the admission of his prior convictions."); Redditt, 381 F.3d at 601 (upholding the admission of evidence under Rule 609(b) where "credibility was a critical factor in the case in light of the complete contradiction between the defendant's testimony and the testimony of the government witness"); Buchanan, 2012 WL 1987917, at *1 ("[P]erhaps the most significant factor pointing in the direction of admission is the importance of Plaintiff's testimony and the centrality of witness credibility to the outcome of this case.").

After careful consideration of all the Montgomery factors, the court finds that the probative value of evidence concerning plaintiff's 2003 conviction substantially outweighs its prejudicial effect. Therefore, the court finds that this evidence will be admissible under Rule 609(a)(2) and (b) for purposes of impeachment, and plaintiff's first motion in limine is denied to the extent it seeks to exclude this evidence.

In his motion, plaintiff also seeks to exclude evidence of his 2011 theft conviction. Although the court has not been convinced that this offense was "not considered a crime at all," as plaintiff suggests, the court still finds, based on the limited record at this stage, that evidence of this conviction is not admissible for impeachment purposes under Rule 609. Specifically, the court has not been presented with any evidence to suggest that this conviction meets either of the criteria for admission set out in Rule 609(a), as it has not been established that this crime was "punishable . . . by imprisonment for more than one year," or that it required proof of "a dishonest act or false statement." In their response, defendants indicate that they "have no information about the nature of Plaintiff's theft conviction," which of course makes it difficult for the court to analyze. Accordingly, plaintiff's first motion in limine is granted to the extent it seeks to exclude evidence of plaintiff's 2011 theft conviction.

### Plaintiff's Motions in Limine #2 and #3

In his second and third motions in limine, plaintiff seeks to bar defendants from presenting any evidence or arguments that plaintiff abandoned his art work. In their responses, defendants argue that this type of evidence should be considered by the jury as a defense to all of plaintiff's

claims.

As for plaintiff's VARA claim, the court agrees that plaintiff's inaction with respect to his art work is insufficient to constitute a waiver of plaintiff's rights under the statute. While it is possible to waive your rights under VARA, a waiver only occurs "if the author expressly agrees to such waiver in a written instrument signed by the author" which "specifically identif[ies] the work, and uses of that work, to which the waiver applies." 17 U.S.C. § 106A(e)(1); see also Martin v. City of Indianapolis, 982 F. Supp. 625, 636 (S.D. Ind. 1997) ("[A] waiver of an artist's rights under VARA must be specific as to use and should be strictly construed."). Clearly, there is no evidence of such a written waiver in this case. Accordingly, to the extent plaintiff's second motion in limine seeks to bar any legal argument that plaintiff's actions or inactions with respect to his art work constitutes a waiver of his VARA rights, the motion is granted.[2]

That being said, plaintiff has not met his burden to show that the evidence of abandonment is clearly inadmissible for all purposes. Indeed, even with respect to the VARA claim, evidence concerning the manner in which plaintiff's art work was stored, the fact that plaintiff had failed to pay rent for a long period of time or maintain electricity for the premises, and the fact that plaintiff did not insure his property or keep an inventory of his items, may be relevant on other pertinent issues, such as whether these were works of recognized stature, and if so, the value of those works. Accordingly, to the extent plaintiff's second motion in limine seeks to bar that type of evidence, it is denied.

As for plaintiff's state law claims, plaintiff argues that any evidence of abandonment should be barred because defendants failed to comply with the requirements of the Forcible Entry and Detainer Act. This argument misses the mark. If the jury determines that plaintiff actually abandoned his property, including both his right to occupy the premises and his right to possess the personal property, there would no longer be any rights to extinguish through the courts. See Perry v. Evanston Young Men's Christian Ass'n, 92 Ill. App. 3d 820, 825 (1981) ("The general rule is that an action under a forcible entry and detainer statute may not be maintained where an individual's possession is terminated prior to the alleged wrongful entry, by lawful surrender or transfer, by voluntary abandonment or by eviction which has ripened into a peaceful possession on the part of the intruder."). More importantly, this issue was already presented to the court as part of plaintiff's motion for summary judgment, and the court concluded that there was sufficient evidence "for a trier of fact to reasonably conclude that plaintiff had abandoned the premises at the time defendants entered and removed his belongings." The court is not inclined to revisit this issue or reconsider that order at this stage through a motion in limine. Accordingly, plaintiff's third motion in limine is denied.

### Defendants' Motion in Limine #1

In defendants' first motion in limine, they seek to bar plaintiff from introducing several

---

[2]In their response, defendants argue that since abandonment is a defense to a claim of copyright infringement, it should also apply to a VARA claim, but the court need not resolve this issue. As defendants acknowledge in their brief, abandonment of a copyright must be manifested by some overt act indicative of a purpose to surrender the rights. Here, while there is evidence of plaintiff's inaction with respect to maintaining his art work, the court has not been presented with any evidence of an overt act indicating that plaintiff was abandoning his VARA rights.

exhibits that show the purported value of certain works of art that were, with one exception noted below, exhibited or donated by plaintiff in 2013 or 2014. Defendants argue that this evidence is improper because plaintiff was not disclosed as an expert witness on these matters, and that this evidence is irrelevant, confusing, and prejudicial. In response, plaintiff asserts that this evidence would be proper opinion testimony by a lay witness under Rule 701, and he argues that this evidence is relevant because "the jury can use the information for comparative purposes."

As an initial matter, it is not clear whether the value that plaintiff places on his own art work—whether through price lists for various exhibitions or valuations for purposes of an exhibitor's insurance—are relevant to determining the actual value of the works. Indeed, the parties seem to be proceeding under the assumption that an expert witness is necessary to appraise plaintiff's works and provide an actual commercial value for those items.[3] Here, any potential relevance is one further step removed, because these exhibits all relate to works of art that were either exhibited or donated after the destruction of plaintiff's property in 2010 (and after this lawsuit had already been filed), and therefore do little to show the value of the destroyed works. Moreover, to the extent that these non-expert valuations of plaintiff's later-created works have any probative value whatsoever, the evidence would still be excluded under Rule 403 because that minimal probative value would be substantially outweighed by a danger of confusing the issues or misleading the jury. Finally, as to plaintiff's argument that the jury can use this evidence for comparative purposes, that type of analysis would require an expert to be able to compare a work of art that was destroyed with one of these latter works, which would be beyond the purview of plaintiff's lay testimony.

For all these reasons, the court grants defendants' first motion in limine as to these later-created works.[4] At the trial, the parties should focus their proofs on the works of art that were allegedly destroyed by defendants, rather than taking up the jury's time with trying to prove the value of plaintiff's other art work.

### Defendants' Motion in Limine #2

In their second motion in limine, defendants seek to bar any arguments or references to punitive damages. "[T]he trial court may submit the issue of punitive damages to the jury only if the plaintiff has made out a prima facie case for such damages." Franz v. Calaco Dev. Corp., 352 Ill. App. 3d 1129, 1138 (2004). Punitive damages are "awarded only where the defendant's conduct is willful or outrageous due to evil motive or a reckless indifference to the rights of others." Id. at 1137. "[P]unitive damages are not favored in the law" and are "available only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression, willfulness, or other circumstances of aggravation." Id.

---

[3]The decision to rely on expert testimony also seems to defeat plaintiff's contention that his testimony could be considered lay opinion testimony under Rule 701. See Fed. R. Evid. 701(c) (providing that "testimony in the form of an opinion [under Rule 701] is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702").

[4]There is one exhibit cited in defendants' first motion in limine that relates to two works of art displayed in the Dubuque Museum of Art in 2007. It is not clear to the court whether those works were among the works of art that were destroyed by defendants. Therefore, the court is unable to rule on the motion in limine as to this exhibit at this time.

6

**App. 22**

At this stage of the proceeding, the court cannot say that plaintiff has established a prima facie case for punitive damages, as there has been no showing that defendants' conduct in removing plaintiff's property from the premises was willfully done with malice or an evil motive, or that there were any other aggravating factors. Instead, it appears that defendants, at most, made a mistake about how to proceed with removing plaintiff's property from their premises after it appeared that he had stopped paying the rent. Moreover, whether or not defendants were fully aware of their legal obligations as a landlord, the court cannot say that they acted with reckless indifference to plaintiff's rights given the fact that they removed and placed in storage for plaintiff many items from the premises that they thought might have some value. Accordingly, at this point the court does not believe that there is sufficient evidence to present the issue of punitive damages to the jury, and therefore defendants' second motion in limine is granted. Unless given prior approval by the court as the trial unfolds, plaintiff and his attorneys should not make any mention or argument to the jury concerning punitive damages.

### Defendants' Motion in Limine #3

In their third motion in limine, defendants ask to bar plaintiff from testifying as an expert witness concerning (1) whether his art work was of recognized stature, and (2) the estimated value of that art work. Defendants argue that plaintiff was only disclosed as a fact witness and was not disclosed as an expert witness in these areas. In response, plaintiff contends that he can testify about these subjects either as a fact witness or as a lay opinion witness under Rule 701.

As an initial matter, the court agrees that plaintiff will be able to testify as a fact witness concerning his art work. This may include testimony showing that his art work has been exhibited or recognized by other members of the art community. Plaintiff's testimony as a fact witness could also include any values that he previously ascribed to his art work, such as listed sales prices from an art gallery or insured values of his works. However, anything beyond that sort of factual testimony will be prohibited because plaintiff has not been qualified as an expert concerning these subjects and, more importantly, was never disclosed as an expert witness. See Fed. R. Civ. P. 37(c)(1). Moreover, plaintiff's attempt to offer his opinion on these issues as a lay witness under Rule 701 is unavailing. A party cannot use Rule 701 to circumvent the normal requirements of presenting an expert opinion under Rule 702. Indeed, an opinion that is based on specialized knowledge, such as whether a work of art is of recognized stature and the value of that work, are specifically excluded from the contours of Rule 701. See Fed. R. Evid. 701(c); see also United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002) (explaining that lay-opinion testimony is not admissible "to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events"). Accordingly, any opinion evidence on these topics must come from plaintiff's disclosed experts rather than from plaintiff himself. Therefore, defendants' third motion in limine is granted to the extent it seeks to preclude plaintiff from offering an opinion or expert testimony, but denied to the extent it also seeks to prevent him from testifying as a fact witness on matters related to these subjects.

### Daubert Motions

Finally, both parties have filed motions in limine seeking to bar some or all of the other party's expert witness. In particular, plaintiff seeks to exclude Parts II and III of Charles Rosoff's

7

**App. 23**

expert report concerning the fair market value of plaintiff's art work and whether those works are of recognized stature, and defendants seek to exclude the expert testimony of Pamela Bardo regarding the valuation of plaintiff's destroyed art work.

Challenges to the anticipated testimony of expert witnesses are governed by Federal Rule of Evidence 702 and the standards announced in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny. A district court functions as a "gatekeeper" regarding expert testimony and must determine whether a party's proffered expert testimony is relevant and reliable. Daubert, 509 U.S. at 589. In determining the admissibility of expert testimony, the court employs a three-step analysis and considers whether (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony is scientifically reliable; and (3) the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. See Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007) (citing Fed. R. Evid. 702 and Daubert, 509 U.S. at 592-93). The court's role in determining the admissibility of expert opinion is not to decide whether the opinion is correct. See Chapman v. Maytag Corp., 297 F.3d 682, 687 (7th Cir. 2002).

In both motions in limine, there is no dispute that the opposing expert witness is qualified to render an opinion, and that the expert's testimony will assist the trier of fact. Instead, each motion attempts to challenge the reasoning or methodology of the expert under the second step of the analysis. For instance, plaintiff complains that Rosoff failed to identify with any specificity what works of art he was using as a comparison to plaintiff's art work. Similarly, defendants assert that Bardo improperly relied on plaintiff's own valuation of his works rather than finding a comparison to other works of art. These types of criticisms, however, go more to the weight the jury should give these opinions, rather than their admissibility. See Daubert, 509 U.S. at 596 (recognizing cross-examination and careful jury instructions, not the exclusion of expert testimony, are the preferred methods of dealing with challenged expert testimony); see also Lapsley v. Xtek, Inc., 689 F.3d 802, 805 (7th Cir. 2012) ("A Daubert inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. If the proposed expert testimony meets the Daubert threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."). Accordingly, the court declines to bar either of the challenged expert witnesses, and therefore, plaintiff's fourth motion in limine and defendants' fourth motion in limine are both denied.

Date: 9/13/2017                                         ENTER:

_____

FREDERICK J. KAPALA

District Judge

8

**App. 24**

# Works by
## Christian Narkiewicz-Laine

|  | Title / Description | No. of Works |
|---|---|---|
| 11 | D'Espace D'Emploi | 1 |
| 12 | Nude Falling Down the Staircase | 1 |
| 15 | Rhine River Valley | 1 |
| 16 | Alsatian Landscape | 1 |
| 17 | Pont Neuf Bridge | 1 |
| 18 | Cathedral of Strasbourg I | 1 |
| 19 | Cathedral of Strasbourg II | 31 |
| 30 | Finnish orthodox Church in Karelia. 31 prints. | 31 |
| 31 | Finnish Orthodox Church in Karelia II. 31 prints. | 31 |
| 32 | Portrait of Alexander Solzenicyn. 31 prints. | 31 |
| 33 | The Death of Ivan Ilyich. 31 prints. | 31 |
| 34 | KGB. 31 prints. | 31 |
| 35 | Pictures at an Exposition. 31 prints. | 31 |
| 36 | Untitled (Geometry). 21 prints. | 21 |
| 40 | How to Make a McDonald's | 21 |
| 41 | McDonald's | 1 |
| 42 | The Sinking of Post Modernism | 1 |
| 43 | Logan Square Monument 1. 6 prints. | 1 |
| 44 | Frank Lloyd Wright Residence 1. 6 prints. | 6 |
| 45 | Frank Lloyd Wright Residence 2. 6 prints. | 6 |
| 46 | Frank Lloyd Wright Residence 3. 6 prints. | 6 |
| 47 | Federal Reserve Bank of Chicago. 6 prints. | 6 |
| 48 | Museum of Science and Industry II. 6 prints. | 6 |
| 49 | Administration Building, South Park Commissioners. 6 prints. | 6 |
| 50 | Michigan Avenue Bridge 2. 6 prints. | 6 |
| 51 | Union Station 1. 6 prints. | 6 |
| 52 | Union Station Interior 1. 6 prints. | 6 |
| 53 | Union Station Interior 2. 6 prints. | 6 |
| 54 | Union Station 3. 6 prints. | 6 |
| 55 | Stone Container Building. 6 prints. | 6 |
| 56 | Shedd Aquarium Building. 6 prints. | 6 |
| 57 | Field Museum 1. 6 prints. | 6 |
| 58 | Museum of Science and Industry Pediment Detail. 6 prints. | 6 |
| 59 | Museum of Science and Industry Pediment 1. 6 prints. | 6 |
| 60 | Museum of Science and Industry Pediment 2. 6 prints. | 6 |
| 61 | City Hall/Cook County Building. 6 prints. | 6 |
| 62 | Statue of the Republic. 6 prints. | 6 |
| 63 | Grant Park Monuments. 6 prints. | 6 |
| 64 | Academy of Science. 6 prints. | 6 |
| 65 | Elks Memorial 1. 6 prints. | 6 |
| 66 | The Art Institute of Chicago 1. 6 prints. | 6 |
| 67 | Union Station Interior 3. 6 prints. | 6 |
| 68 | Michigan Avenue Bridge 1. 6 prints. | 6 |

1

| | | |
|---|---|---|
| 69 | Union Station Interior 4. 6 prints. | 6 |
| 70 | Union Station 2. 6 prints. | 6 |
| 71 | Continental Illinois Bank & Trust Company. 6 prints. | 6 |
| 72 | Chicago Academy of Sciences. 6 prints. | 6 |
| 73 | The Art Institute of Chicago 2. 6 prints. | 6 |
| 74 | Field Museum. 6 prints. | 6 |
| 75 | Soldier's Field 1. 6 prints. | 6 |
| 76 | Orchestra Hall, Michigan Avenue. 6 prints. | 6 |
| 77 | Selfridges Department Store, London, Great Britain. 6 prints. | 6 |
| 78 | Santa Fe Building, Michigan Avenue. 6 prints. | 6 |
| 79 | Museum of Science and Industry 2. 6 prints. | 6 |
| 80 | Field Museum 2. 6 prints. | 6 |
| 81 | Elks Memorial 2. 6 prints. | 6 |
| 82 | Soldier's Field 2. 6 prints. | 6 |
| 83 | The Art Institute of Chicago 3. 6 prints. | 6 |
| 84 | College of Surgeons. 6 prints. | 6 |
| 85 | Polish Consulate. 6 prints. | 6 |
| 86 | Logan Square Monument 2. 6 prints. | 6 |
| 93 | AT&T Building. 6 prints. | 6 |
| 94 | 900 North Michigan Avenue. 6 prints. | 6 |
| 95 | North Michigan Avenue. 6 prints. | 6 |
| 96 | 333 West Wacker Drive. 6 prints. | 6 |
| 97 | 311 South Wacker Drive. 6 prints. | 6 |
| 98 | Xerox Center. 6 prints. | 6 |
| 99 | Sky Needle. 6 prints. | 6 |
| 100 | Leo Burnett Building I. 6 prints. | 6 |
| 101 | Leo Burnett Building II. 6 prints. | 6 |
| 102 | Leo Burnett Building II. 6 prints. | 6 |
| 103 | Paper Skyscraper 1 | 1 |
| 104 | The Illusion of a Skyscraper-A Study 1 | 1 |
| 105 | Skyscraper Façade Study 1 | 1 |
| 106 | Skyscraper Façade Study 1 | 1 |
| 108 | The Propulaea, Acropolis I. 6 prints. | 6 |
| 109 | Parthenon I. 6 prints. | 6 |
| 110 | Parthenon II.6 prints. | 6 |
| 111 | Parthenon III. 6 prints. | 6 |
| 112 | Parthenon IV. 6 prints. | 6 |
| 113 | Parthenon V. 6 prints. | 6 |
| 114 | Temple of Poseidon I. 6 prints. | 6 |
| 115 | Temple of Poseidon II. 6 prints. | 6 |
| 116 | Athena Nike I. 6 prints. | 6 |
| 117 | Athena Nike II. 6 prints. | 6 |
| 118 | Athena Nike III. 6 prints. | 6 |
| 119 | Eretheon I. 6 prints. | 6 |
| 120 | Eretheon II. 6 prints. | 6 |

2

| | | |
|---|---|---|
| 121 | Temple of Zeus I. 6 prints. | 6 |
| 122 | Temple of Zeus II. 6 prints. | 6 |
| 123 | Tower of the Winds. 6 prints. | 6 |
| 124 | Monument to Asclepius. 6 prints. | 6 |
| 125 | Temple of Hephaestus I. 6 prints. | 6 |
| 126 | Temple of Hephaestus II. 6 prints. | 6 |
| 127 | Temple of Hephaestus III. 6 prints. | 6 |
| 128 | Rome Coliseum I, 6 prints. | 6 |
| 129 | Rome Coliseum II, 6 prints. | 6 |
| 130 | Rome Coliseum III. 6 prints. | 6 |
| 131 | Pantheon I. 6 prints. | 6 |
| 132 | Pantheon II. 6 prints. | 6 |
| 133 | Bridge of Sant' Angelo. 6 prints. | 6 |
| 134 | Trajan's Column. 6 prints. | 6 |
| 135 | Marcus Aurelius Column. 6 prints. | 6 |
| 136 | Arch of Constantine. 6 prints. | 6 |
| 137 | Basilica di San Giovanni in Laterno I. 6 prints. | 6 |
| 138 | Basilica di San Giovanni in Laterno II. 6 prints. | 6 |
| 139 | Basilica di San Giovanni inn Laterno III. 6 prints. | 6 |
| 140 | Piazza del Popolo I. 6 prints. | 6 |
| 141 | Piazza del Popolo II. 6 prints. | 6 |
| 142 | Piazza Spagna. 6 prints. | 6 |
| 143 | Quirinal Palace. 6 prints. | 6 |
| 144 | Piazza Navona (Bernini and Borromini). 6 prints. | 6 |
| 145 | Foro Romano I. 6 prints. | 6 |
| 146 | Foro Romano II. 6 prints. | 6 |
| 147 | Foro Romano III. 6 prints. | 6 |
| 148 | Santa Maria in Trastevere. 6 prints. | 6 |
| 149 | Santa Maria Maggiore. 6 prints. | 6 |
| 150 | Basilico St. Pietro Eclipse (Colonade Bernini) I. 6 prints. | 6 |
| 151 | Basilico St. Pietro Eclipse (Colonade Bernini) II. 6 prints. | 6 |
| 152 | Basilico St. Pietro Eclipse (Sculpture Detail) 1. 6 prints. | 6 |
| 153 | The Propulaea, Acropolis III. 6 prints. | 6 |
| 154 | Eretheon III. 6 prints. | 6 |
| 155 | Eretheon IV. 6 prints. | 6 |
| 156 | Monument to Vitoria Emanuele I. 6 prints. | 6 |
| 157 | Monument to Vitoria Emanuele II. 6 prints. | 6 |
| 158 | Arco di Constantino. 6 prints. | 6 |
| 159 | Palazzo Senatorio, Piazza del Campdoglio I. 6 prints. | 6 |
| 160 | Palazzo Senatorio, Piazza del Campdoglio II. 6 prints. | 6 |
| 161 | Museum Capitolino Stairs. 6 prints. | 6 |
| 162 | Marcus Aurelius Column, Piazza Colonnal. 6 prints. | 6 |
| 163 | Imperial Fora I. 6 prints. | 6 |
| 164 | Imperial Fora II. 6 prints. | 6 |
| 165 | The Obelisk, Piazza del Quirinale I. 6 prints. | 6 |

3

| | | |
|---|---|---|
| 166 | The Obelisk, Piazza del Quirinale II. 6 prints. | 6 |
| 167 | The Obelisk, Piazza del Quirinale III. 6 prints. | 6 |
| 168 | Palazzo di Giustizia, Piazza dei Tribunali I. 6 prints. | 6 |
| 169 | Palazzo di Giustizia, Piazza dei Tribunali II. 6 prints. | 6 |
| 170 | Cortile della Pigna, Micchion della Pigni. 6 prints. | 6 |
| 171 | Basilico St. Pietro Eclipse (Sculpture Detail) II. 6 prints. | 6 |
| 172 | Trevi Fountain. 6 prints. | 6 |
| 173 | Michaelangelo's Capitol Steps. 6 prints. | 6 |
| 174 | Corinthian Composite Study #1 | 1 |
| 175 | Corinthian Composite Study #2 | 1 |
| 176 | Corinthian Composite Study #3 | 1 |
| 177 | The Fictitious Tomb of Dante at Ravena | 1 |
| 178 | Villa Publius Ovidius Naso | 1 |
| 179 | Polychrome of the Parthenon | 1 |
| 180 | Temple of Hephaistos | 1 |
| 181 | Temple of Athena Nike | 1 |
| 182 | Poster: Temporary Monuments-Cities Under Reconstruction Athens/Rome. 11 prints. | 11 |
| 183 | Polychrome Caryatid I (Erectheion Acropolis) | 1 |
| 184 | Polychrome Caryatid II (Erectheion Acropolis) | 1 |
| 185 | Purple Caryatid I | 1 |
| 186 | Red Caryatid I | 1 |
| 187 | Blue Caryatid I | 1 |
| 190 | Fuente de los Amantes, Los Clubes by Luis Barragan (Mexico) #1. 6 prints. | 6 |
| 191 | Fuente de los Amantes, Los Clubes by Luis Barragan (Mexico) #2. 6 prints. | 6 |
| 192 | Cuadra San Cristobal, Los Clubes by Luis Barragan (Mexico) #1. 6 prints. | 6 |
| 193 | Cuadra San Cristobal, Los Clubes by Luis Barragan (Mexico) #2. 6 prints. | 6 |
| 194 | Cuadra San Cristobal, Los Clubes by Luis Barragan (Mexico) #3. 6 prints. | 6 |
| 195 | Torres Satelite by Luis Barragan (Mexico) #1. 6 prints. | 6 |
| 196 | Torres Satelite by Luis Barragan (Mexico) #2. 6 prints. | 6 |
| 197 | Torres Satelite by Luis Barragan (Mexico) #3. 6 prints. | 6 |
| 198 | Torres Satelite by Luis Barragan (Mexico) #4. 6 prints. | 6 |
| 199 | Torres Satelite by Luis Barragan (Mexico) #5. 6 prints. | 6 |
| 200 | Capilla de Tlalpan by Luis Barragan (Mexico) #1. 6 prints. | 6 |
| 201 | Capilla de Tlalpan by Luis Barragan (Mexico) #2. 6 prints. | 6 |
| 202 | Capilla de Tlalpan by Luis Barragan (Mexico) #3. 6 prints. | 6 |
| 203 | Capilia de Tlalpan by Luis Barragan (Mexico) #4. 6 prints. | 6 |
| 204 | Casa Gilardi by Luis Barragan (Mexico) #1. 6 prints. | 6 |
| 205 | Casa Gilardi by Luis Barragan (Mexico) #2. 6 prints. | 6 |
| 206 | Casa Gilardi by Luis Barragan (Mexico) #3. 6 prints. | 6 |

4

App. 29

| | | |
|---|---|---|
| 207 | Barragan Home at Calle Ramierez Mexico City I, (Mexico) #1. 6 prints. | 6 |
| 208 | Barragan Home at Calle Ramierez Mexico City I (Mexico) #2. 6 prints. | 6 |
| 209 | Las Arboledas I, (Mexico), #1. 6 prints. | 6 |
| 210 | Las Arboledas I (Mexico) #2. 6 prints. | 6 |
| 211 | Panoramic View of Chicago. 6 prints. | 6 |
| 212 | Panoramic View of Chicago Lakefront. 6 prints. | 6 |
| 213 | Panoramic View of Chicago On The River. 6 prints. | 6 |
| 214 | Theoretical Skyscraper-A Study I | 1 |
| 215 | Theoretical Skyscraper-A Study II | 1 |
| 217 | American Kitsch | 1 |
| 218 | Drawing for American Kitch (Installation) I | 1 |
| 219 | Drawing for American Kitch (Installation) II | 1 |
| 220 | Drawing for American Kitch (Installation) III | 1 |
| 225 | Napkin Skyscraper Studies. 60 napkins. | 60 |
| 226 | Photographs of New Chicago Skyscrapers. 30 prints. | 30 |
| 227 | Resurrection | 1 |
| 275 | Ephemeral Landscapes. 6 prints. | 6 |
| 276 | Drawings for Visionary Landscapes. 20 drawings. | 20 |
| 277 | Ephermeral Landscape Installation. 8 rolls. | 8 |
| 278 | Sketches for Abandoned and Forgotten I. 6 drawings. | 6 |
| 279 | Sketches for Abandoned and Forgotten II. 6 drawings. | 6 |
| 280 | Abandoned and Forgotten I. 6 prints. | 6 |
| 281 | Abandoned and Forgotten II. 6 prints. | 6 |
| 282 | Universal Disintegration. 6 prints. | 6 |
| 283 | Wunderjahr. 6 prints. | 6 |
| 284 | Death of the Poet. 6 prints. | 6 |
| 285 | The Universe is Burning | 1 |
| 286 | Orion | 1 |
| 287 | Enemy of the People. 6 prints. | 6 |
| 288 | Death | 1 |
| 289 | Finland is Vanishing | 1 |
| 290 | The Universe is Burning | 1 |
| 291 | Gangrene: The Truth About How Charlotte Died | 1 |
| 292 | Lone Tree | 1 |
| 293 | Temple at Coba | 1 |
| 294 | Temple at Tulum | 1 |
| 295 | For He Hath Make The Round World So Sure That It Shall Not Be Moved…. | 1 |
| 296 | Tree I | 1 |
| 297 | Tree II | 1 |
| 298 | My God Is A Consuming Fire | 1 |
| 299 | Despair. 6 prints. | 6 |
| 300 | God. 6 prints. | 6 |

5

**App. 30**

| | | |
|---|---|---|
| 301 | Comet | 1 |
| 302 | Falling Star | 1 |
| 303 | Darkness In Men's Minds | 1 |
| 304 | Eligio de la Sombra (Homage to Luis Borges) | 1 |
| 305 | Untitled (Fire and Snake) | 1 |
| 306 | Father, Son and Holy Ghost | 1 |
| 307 | Winter Solstice | 1 |
| 308 | Landscape I | 1 |
| 309 | Refugee. 6 prints. | 6 |
| 310 | Self Portrait. 6 prints. | 6 |
| 325 | Blue Labyrinth | 1 |
| 326 | Yellow Labyrinth | 1 |
| 328 | Welcome To Lost Nation, Iowa. 6 prints. | 6 |
| 375 | Babylon Chrysalis I. Edition of 3 . | 3 |
| 376 | Babylon Chrysalis II. Edition of 3. | 3 |
| 377 | Babylon Chrysalis III. Edition of 3. | 3 |
| 378 | Babylon Chrysalis IV. Edition of 3. | 3 |
| 379 | Babylon Chrysalis V. Edition of 3. | 3 |
| 380 | Babylon Chrysalis VI. Edition of 3. | 3 |
| 381 | Babylon Chrysalis VII. Edition of 3. | 3 |
| 382 | Babylon Chrysalis VIII. Edition of 3. | 3 |
| 383 | Tower of Babylon. Edition of 3. | 3 |
| 385 | The City of Babylon | 1 |
| 387 | Fueling Nirvana: Just What The Fuck Are They Searching For? Edition of 6. | 6 |
| 388 | Babylon Euphoria Diptych | 1 |
| 390 | (Untitled) Mississippi River Valley | 1 |
| 391 | Someone Said They Heard Something in the Forest. 6 prints. | 6 |
| 392 | Fin du Siecle. 6 prints. | 6 |
| 393 | Universe. 6 prints. | 6 |
| 394 | Ghost Train I. 6 prints. | 6 |
| 395 | Ghost Train II. 6 prints. | 6 |
| 397 | Virtue. 6 prints. | 6 |
| 398 | Ghost Train III (Panel 1). 6 prints. | 6 |
| 399 | Ghost Train III (Panel 2). 6 prints. | 6 |
| 400 | Ghost Train III (Panel 3). 6 prints. | 6 |
| 401 | Ghost Train III (Panel 4). 6 prints. | 6 |
| 402 | Ghost Train III (Panel 5). 6 prints. | 6 |
| 403 | Ghost Train III (Panel 6). 6 prints. | 6 |
| 404 | Ghost Train III (Panel 7). 6 prints. | 6 |
| 405 | You Are Being Watched | 1 |
| 407 | Untitled Landscape Painting | 1 |

**Total Number of Works**: 1,457

6

List of All Items
Removed and Not Returned
without Estimated Values

|  | Title / Description |
|----|---------------------|
| 1 | Are You Nude? |
| 2 | Blue Nude |
| 3 | Vous Etres Nude? |
| 4 | Vous Etres Nude? No.2 |
| 6 | Nude Study No. 1 |
| 8 | Nude Study No. 2 |
| 9 | Nude Study No. 3 |
| 10 | Green Nude |
| 11 | D'Espace D'Emploi |
| 12 | Nude Falling Down the Staircase |
| 13 | Untitled, series of 10 geometric studies. Group. |
| 14 | 30 nude study drawings. Group. |
| 15 | Rhine River Valley |
| 16 | Alsatian Landscape |
| 17 | Pont Neuf Bridge |
| 18 | Cathedral of Strasbourg I |
| 19 | Cathedral of Strasbourg II |
| 20 | Exploding Violin |
| 21 | Book of 50 sketches/drawings. Group. |
| 22 | Photographic documentation of Ephesus, Turkey 50 drawings. Group. |
| 23 | Studies of the Acropolis. 50 drawings. Group. |
| 24 | Studies of the Acropolis. 15 watercolors. Group. |
| 25 | Photographic studies of classical Greek archaeological sites. Group. |
| 26 | Sketchbook of archaeological sites in Delphi, Corinth, Island of Aegina, etc. 30 watercolors. |
| 27 | Portrait of my grandmother |
| 28 | Portrait of my mother |
| 29 | Self-portrait |
| 30 | Finnish orthodox Church in Karelia. 31 prints. |
| 31 | Finnish Orthodox Church in Karelia II. 31 prints. |
| 32 | Portrait of Alexander Solzenicyn. 31 prints. |
| 33 | The Death of Ivan Ilyich. 31 prints. |
| 34 | KGB. 31 prints. |
| 35 | Pictures at an Exposition. 31 prints. |
| 36 | Untitled (Geometry). 21 prints. |
| 37 | 10-15 Zinc plates prepared for engraving. Group. |
| 38 | Briefcase of unpublished poetry with sketches, notes, etc. |
| 39 | Taped interview with Luis Barragan |
| 40 | How to Make a McDonald's |
| 41 | McDonald's |
| 42 | The Sinking of Post Modernism |
| 43 | Logan Square Monument 1. 6 prints. |
| 44 | Frank Lloyd Wright Residence 1. 6 prints. |

App. 33

| | |
|---|---|
| 45 | Frank Lloyd Wright Residence 2. 6 prints. |
| 46 | Frank Lloyd Wright Residence 3. 6 prints. |
| 47 | Federal Reserve Bank of Chicago. 6 prints. |
| 48 | Museum of Science and Industry II. 6 prints. |
| 49 | Administration Building, South Park Commissioners. 6 prints. |
| 50 | Michigan Avenue Bridge 2. 6 prints. |
| 51 | Union Station 1. 6 prints. |
| 52 | Union Station Interior 1. 6 prints. |
| 53 | Union Station Interior 2. 6 prints. |
| 54 | Union Station 3. 6 prints. |
| 55 | Stone Container Building. 6 prints. |
| 56 | Shedd Aquarium Building. 6 prints. |
| 57 | Field Museum 1. 6 prints. |
| 58 | Museum of Science and Industry Pediment Detail. 6 prints. |
| 59 | Museum of Science and Industry Pediment 1. 6 prints. |
| 60 | Museum of Science and Industry Pediment 2. 6 prints. |
| 61 | City Hall/Cook County Building. 6 prints. |
| 62 | Statue of the Republic. 6 prints. |
| 63 | Grant Park Monuments. 6 prints. |
| 64 | Academy of Science. 6 prints. |
| 65 | Elks Memorial 1. 6 prints. |
| 66 | The Art Institute of Chicago 1. 6 prints. |
| 67 | Union Station Interior 3. 6 prints. |
| 68 | Michigan Avenue Bridge 1. 6 prints. |
| 69 | Union Station Interior 4. 6 prints. |
| 70 | Union Station 2. 6 prints. |
| 71 | Continental Illinois Bank & Trust Company. 6 prints. |
| 72 | Chicago Academy of Sciences. 6 prints. |
| 73 | The Art Institute of Chicago 2. 6 prints. |
| 74 | Field Museum. 6 prints. |
| 75 | Soldier's Field 1. 6 prints. |
| 76 | Orchestra Hall, Michigan Avenue. 6 prints. |
| 77 | Selfridges Department Store, London, Great Britain. 6 prints. |
| 78 | Santa Fe Building, Michigan Avenue. 6 prints. |
| 79 | Museum of Science and Industry 2. 6 prints. |
| 80 | Field Museum 2. 6 prints. |
| 81 | Elks Memorial 2. 6 prints. |
| 82 | Soldier's Field 2. 6 prints. |
| 83 | The Art Institute of Chicago 3. 6 prints. |
| 84 | College of Surgeons. 6 prints. |
| 85 | Polish Consulate. 6 prints. |
| 86 | Logan Square Monument 2. 6 prints. |
| 87 | Installation Photograph 1. 6 prints. |
| 88 | Installation Photograph 2. 6 prints. |
| 89 | Installation Photograph 3. 6 prints. |

| | |
|---|---|
| 90 | Installation Photograph 4. 6 prints. |
| 91 | Installation Photograph 5. 6 prints. |
| 92 | Installation Photograph 6. 6 prints. |
| 93 | AT&T Building. 6 prints. |
| 94 | 900 North Michigan Avenue. 6 prints. |
| 95 | North Michigan Avenue. 6 prints. |
| 96 | 333 West Wacker Drive. 6 prints. |
| 97 | 311 South Wacker Drive. 6 prints. |
| 98 | Xerox Center. 6 prints. |
| 99 | Sky Needle. 6 prints. |
| 100 | Leo Burnett Building I. 6 prints. |
| 101 | Leo Burnett Building II. 6 prints. |
| 102 | Leo Burnett Building II. 6 prints. |
| 103 | Paper Skyscraper 1 |
| 104 | The Illusion of a Skyscraper-A Study 1 |
| 105 | Skyscraper Façade Study 1 |
| 106 | Skyscraper Façade Study 1 |
| 107 | Ancient Cities Under Reconstruction (Rome and Athens).... |
| 108 | The Propulaea, Acropolis I. 6 prints. |
| 109 | Parthenon I. 6 prints. |
| 110 | Parthenon II.6 prints. |
| 111 | Parthenon III. 6 prints. |
| 112 | Parthenon IV. 6 prints. |
| 113 | Parthenon V. 6 prints. |
| 114 | Temple of Poseidon I. 6 prints. |
| 115 | Temple of Poseidon II. 6 prints. |
| 116 | Athena Nike I. 6 prints. |
| 117 | Athena Nike II. 6 prints. |
| 118 | Athena Nike III. 6 prints. |
| 119 | Eretheon I. 6 prints. |
| 120 | Eretheon II. 6 prints. |
| 121 | Temple of Zeus I. 6 prints. |
| 122 | Temple of Zeus II. 6 prints. |
| 123 | Tower of the Winds. 6 prints. |
| 124 | Monument to Asclepius. 6 prints. |
| 125 | Temple of Hephaestus I. 6 prints. |
| 126 | Temple of Hephaestus II. 6 prints. |
| 127 | Temple of Hephaestus III. 6 prints. |
| 128 | Rome Coliseum I, 6 prints. |
| 129 | Rome Coliseum II, 6 prints. |
| 130 | Rome Coliseum III. 6 prints. |
| 131 | Pantheon I. 6 prints. |
| 132 | Pantheon II. 6 prints. |
| 133 | Bridge of Sant' Angelo. 6 prints. |
| 134 | Trajan's Column. 6 prints. |

| | |
|---|---|
| 135 | Marcus Aurelius Column. 6 prints. |
| 136 | Arch of Constantine. 6 prints. |
| 137 | Basilica di San Giovanni in Laterno I. 6 prints. |
| 138 | Basilica di San Giovanni in Laterno II. 6 prints. |
| 139 | Basilica di San Giovanni inn Laterno III. 6 prints. |
| 140 | Piazza del Popolo I. 6 prints. |
| 141 | Piazza del Popolo II. 6 prints. |
| 142 | Piazza Spagna. 6 prints. |
| 143 | Quirinal Palace. 6 prints. |
| 144 | Piazza Navona (Bernini and Borromini). 6 prints. |
| 145 | Foro Romano I. 6 prints. |
| 146 | Foro Romano II. 6 prints. |
| 147 | Foro Romano III. 6 prints. |
| 148 | Santa Maria in Trastevere. 6 prints. |
| 149 | Santa Maria Maggiore. 6 prints. |
| 150 | Basilico St. Pietro Eclipse (Colonade Bernini) I. 6 prints. |
| 151 | Basilico St. Pietro Eclipse (Colonade Bernini) II. 6 prints. |
| 152 | Basilico St. Pietro Eclipse (Sculpture Detail) 1. 6 prints. |
| 153 | The Propulaea, Acropolis III. 6 prints. |
| 154 | Eretheon III. 6 prints. |
| 155 | Eretheon IV. 6 prints. |
| 156 | Monument to Vitoria Emanuele I. 6 prints. |
| 157 | Monument to Vitoria Emanuele II. 6 prints. |
| 158 | Arco di Constantino. 6 prints. |
| 159 | Palazzo Senatorio, Piazza del Campdoglio I. 6 prints. |
| 160 | Palazzo Senatorio, Piazza del Campdoglio II. 6 prints. |
| 161 | Museum Capitolino Stairs. 6 prints. |
| 162 | Marcus Aurelius Column, Piazza Colonnal. 6 prints. |
| 163 | Imperial Fora I. 6 prints. |
| 164 | Imperial Fora II. 6 prints. |
| 165 | The Obelisk, Piazza del Quirinale I. 6 prints. |
| 166 | The Obelisk, Piazza del Quirinale II. 6 prints. |
| 167 | The Obelisk, Piazza del Quirinale III. 6 prints. |
| 168 | Palazzo di Giustizia, Piazza dei Tribunali I. 6 prints. |
| 169 | Palazzo di Giustizia, Piazza dei Tribunali II. 6 prints. |
| 170 | Cortile della Pigna, Micchion della Pigni. 6 prints. |
| 171 | Basilico St. Pietro Eclipse (Sculpture Detail) II. 6 prints. |
| 172 | Trevi Fountain. 6 prints. |
| 173 | Michaelangelo's Capitol Steps. 6 prints. |
| 174 | Corinthian Composite Study #1 |
| 175 | Corinthian Composite Study #2 |
| 176 | Corinthian Composite Study #3 |
| 177 | The Fictitious Tomb of Dante at Ravena |
| 178 | Villa Publius Ovidius Naso |
| 179 | Polychrome of the Parthenon |

4

| | |
|---|---|
| 180 | Temple of Hephaistos |
| 181 | Temple of Athena Nike |
| 182 | Poster: Temporary Monuments-Cities Under Reconstruction Athens/Rome. 11 prints. |
| 183 | Polychrome Caryatid I (Erectheion Acropolis) |
| 184 | Polychrome Caryatid II (Erectheion Acropolis) |
| 185 | Purple Caryatid I |
| 186 | Red Caryatid I |
| 187 | Blue Caryatid I |
| 188 | Green Caryatid |
| 189 | House of the Poet |
| 190 | Fuente de los Amantes, Los Clubes by Luis Barragan (Mexico) #1. 6 prints. |
| 191 | Fuente de los Amantes, Los Clubes by Luis Barragan (Mexico) #2. 6 prints. |
| 192 | Cuadra San Cristobal, Los Clubes by Luis Barragan (Mexico) #1. 6 prints. |
| 193 | Cuadra San Cristobal, Los Clubes by Luis Barragan (Mexico) #2. 6 prints. |
| 194 | Cuadra San Cristobal, Los Clubes by Luis Barragan (Mexico) #3. 6 prints. |
| 195 | Torres Satelite by Luis Barragan (Mexico) #1. 6 prints. |
| 196 | Torres Satelite by Luis Barragan (Mexico) #2. 6 prints. |
| 197 | Torres Satelite by Luis Barragan (Mexico) #3. 6 prints. |
| 198 | Torres Satelite by Luis Barragan (Mexico) #4. 6 prints. |
| 199 | Torres Satelite by Luis Barragan (Mexico) #5. 6 prints. |
| 200 | Capilla de Tlalpan by Luis Barragan (Mexico) #1. 6 prints. |
| 201 | Capilla de Tlalpan by Luis Barragan (Mexico) #2. 6 prints. |
| 202 | Capilla de Tlalpan by Luis Barragan (Mexico) #3. 6 prints. |
| 203 | Capilia de Tlalpan by Luis Barragan (Mexico) #4. 6 prints. |
| 204 | Casa Gilardi by Luis Barragan (Mexico) #1. 6 prints. |
| 205 | Casa Gilardi by Luis Barragan (Mexico) #2. 6 prints. |
| 206 | Casa Gilardi by Luis Barragan (Mexico) #3. 6 prints. |
| 207 | Barragan Home at Calle Ramierez Mexico City I, (Mexico) #1. 6 prints. |
| 208 | Barragan Home at Calle Ramierez Mexico City I (Mexico) #2. 6 prints. |
| 209 | Las Arboledas I, (Mexico), #1. 6 prints. |
| 210 | Las Arboledas I (Mexico) #2. 6 prints. |
| 211 | Panoramic View of Chicago. 6 prints. |
| 212 | Panoramic View of Chicago Lakefront. 6 prints. |
| 213 | Panoramic View of Chicago On The River. 6 prints. |
| 214 | Theoretical Skyscraper-A Study I |
| 215 | Theoretical Skyscraper-A Study II |
| 216 | Upside Down Man With Snake and Knife |
| 217 | American Kitsch |
| 218 | Drawing for American Kitch (Installation) I |
| 219 | Drawing for American Kitch (Installation) II |
| 220 | Drawing for American Kitch (Installation) III |
| 221 | Untitled Still Life |
| 222 | Upside Down Man |
| 223 | Blue Man |

5

| | |
|---|---|
| 224 | Red Man |
| 225 | Napkin Skyscraper Studies. 60 napkins. |
| 226 | Photographs of New Chicago Skyscrapers. 30 prints. |
| 227 | Resurrection |
| 228 | Book of Sketches. 96 pages. |
| 229 | Harbor at Portofino I (Italy) |
| 230 | Harbor at Portofino II (Italy) |
| 231 | Harbor at Portofino III (Italy) |
| 232 | Tigullio Golf I (Italy) |
| 234 | Tigullio Golf II (Italy) |
| 235 | Santa Margherita Ligure (Italy) |
| 236 | Rapall (Italy) |
| 237 | Camogli (Italy) |
| 238 | Book of Sketches. 96 pages. |
| 239 | Four Books of 35mm Slides Prepared for Lectures and Classes on Theory and Aesthetics of Art and Architecture at IIT. Original photographs, 3,400 35mm color transparencies,written lectures. Group. |
| 240 | On Route to Kristiansund (Norway) |
| 241 | Halsaf-Jorden (Norway) |
| 242 | Arsundf Jorden (Norway) |
| 243 | Tingvolf Jorden (Norway) |
| 244 | Kvernesf Jorden (Norway) |
| 245 | On Route to Sunndal (Norway) |
| 246 | Gjennes (Norway) |
| 247 | Langf Jorden (Norway) |
| 248 | Averoy (Norway) |
| 249 | Moldef Jorden (Norway) |
| 250 | Romsdalsf Jorden (Norway) |
| 251 | Nogvaf Jorden (Norway) |
| 252 | Gryfaf Jorden (Norway) |
| 254 | Book of Sketches. 96 pages. |
| 255 | Chicago Lakefront Skyline |
| 256 | Apocalypse in the Forest |
| 257 | Why Do You Think Our Dreams Live Separate Lives? |
| 258 | He Maketh His Angels Spirits, and His Ministers |
| 259 | Untitled: (Landscape IX) |
| 260 | Book of Sketches. 96 pages. |
| 261 | Untitled: (Landscape IX) |
| 262 | Untitled: (Landscape X). In progress. |
| 263 | Untitled Landscape, Mississippi River II |
| 264 | Untitled Landscape, Mississippi River III |
| 265 | Untitled Landscape, Mississippi River IV |
| 266 | Book of Sketches. 96 pages. |
| 267 | CD With Computer Images for Prints. 70 original drawings. |
| 268 | Architectural Drawing I |

| | |
|---|---|
| 269 | Architectural Drawing II |
| 270 | Sound Installation(Dubuque Museum of Art). Original audio tapes in varying durations. Group. |
| 271 | Untitled Landscape, Mississippi River I. In progress. |
| 272 | Untitled Landscape, Mississippi River II. In progress. |
| 273 | Miscellaneous sketches, poetry, tapes with recorded sounds, etc. In progress. |
| 274 | Miscellaneous printed photographs and negatives. In Progress. |
| 275 | Ephemeral Landscapes. 6 prints. |
| 276 | Drawings for Visionary Landscapes. 20 drawings. |
| 277 | Ephermeral Landscape Installation. 8 rolls. |
| 278 | Sketches for Abandoned and Forgotten I. 6 drawings. |
| 279 | Sketches for Abandoned and Forgotten II. 6 drawings. |
| 280 | Abandoned and Forgotten I. 6 prints. |
| 281 | Abandoned and Forgotten II. 6 prints. |
| 282 | Universal Disintegration. 6 prints. |
| 283 | Wunderjahr. 6 prints. |
| 284 | Death of the Poet. 6 prints. |
| 285 | The Universe is Burning |
| 286 | Orion |
| 287 | Enemy of the People. 6 prints. |
| 288 | Death |
| 289 | Finland is Vanishing |
| 290 | The Universe is Burning |
| 291 | Gangrene: The Truth About How Charlotte Died |
| 292 | Lone Tree |
| 293 | Temple at Coba |
| 294 | Temple at Tulum |
| 295 | For He Hath Make The Round World So Sure That It Shall Not Be Moved…. |
| 296 | Tree I |
| 297 | Tree II |
| 298 | My God Is A Consuming Fire |
| 299 | Despair. 6 prints. |
| 300 | God. 6 prints. |
| 301 | Comet |
| 302 | Falling Star |
| 303 | Darkness In Men's Minds |
| 304 | Eligio de la Sombra (Homage to Luis Borges) |
| 305 | Untitled (Fire and Snake) |
| 306 | Father, Son and Holy Ghost |
| 307 | Winter Solstice |
| 308 | Landscape I |
| 309 | Refugee. 6 prints. |
| 310 | Self Portrait. 6 prints. |
| 311 | Mt. St. Helena |
| 312 | The Eye of God |

| | |
|---|---|
| 313 | Night Fire |
| 314 | Distrust. 6 prints. |
| 315 | Hejira. 6 prints. |
| 316 | I Am Tortured. 6 prints. |
| 317 | Unfaithful. 6 prints. |
| 318 | Memories. 6 prints. |
| 319 | Amour-Propre. 6 prints. |
| 320 | Apathy. 6 prints. |
| 321 | Dreams. 6 prints. |
| 322 | Elevation. 6 prints. |
| 323 | Enigmatic. 6 prints. |
| 324 | Lost. 6 prints. |
| 325 | Blue Labyrinth |
| 326 | Yellow Labyrinth |
| 327 | Welcome To Lost Nation, Iowa. Edition of 5. 19.25 minutes. |
| 328 | Welcome To Lost Nation, Iowa. 6 prints. |
| 329 | Mississippi River No. 02-17-05-01. 21 prints. |
| 330 | Mississippi River No. 02-17-05-02. 21 prints. |
| 331 | Mississippi River No. 02-18-05-02. 21 prints. |
| 332 | Mississippi River No. 02-17-05-06. 21 prints. |
| 333 | Mississippi River No. 02-17-05-05. 21 prints. |
| 334 | Mississippi River No. 02-17-05-04. 21 prints. |
| 335 | Mississippi River No. 02-17-05-08. 21 prints. |
| 336 | Mississippi River No. 02-17-05-07. 21 prints. |
| 337 | Mississippi River No. 02-17-05-09. 21 prints. |
| 338 | Mississippi River No. 02-21-05-05. 21 prints. |
| 339 | Mississippi River No. 02-21-05-07. 21 prints. |
| 340 | Mississippi River No. 02-17-05-03. 21 prints. |
| 341 | Mississippi River No. 02-18-05-01. 21 prints. |
| 342 | Mississippi River No. 02-25-05-01. 21 prints. |
| 343 | Mississippi River No. 02-21-05-04. 21 prints. |
| 344 | Mississippi River No. 02-25-05-06. 21 prints. |
| 345 | Mississippi River No. 02-23-05-01. 21 prints. |
| 346 | Mississippi River No. 02-23-05-01. 21 prints. |
| 347 | Mississippi River No. 02-20-05-01. 21 prints. |
| 348 | Mississippi River No. 02-20-05-04. 21 prints. |
| 349 | Mississippi River No. 02-20-05-05. 21 prints. |
| 350 | Mississippi River No. 02-22-05-01. 21 prints. |
| 351 | Mississippi River No. 02-22-05-02. 21 prints. |
| 352 | Mississippi River No. 02-23-05-03. 21 prints. |
| 353 | Mississippi River No. 02-23-05-02. 21 prints. |
| 354 | Mississippi River No. 02-23-05-04. 21 prints. |
| 355 | Mississippi River No. 03-01-05-01. 21 prints. |
| 356 | Mississippi River No. 08-28-05-02. 21 prints. |
| 357 | Mississippi River No. 08-25-05-03. 21 prints. |

App. 40

| | |
|---|---|
| 358 | Mississippi River No. 08-21-05-04. 21 prints. |
| 359 | Mississippi River No. 08-21-05-02. 21 prints. |
| 360 | Mississippi River No. 08-21-05-01. 21 prints. |
| 361 | Mississippi River No. 01-30-05-02. 21 prints. |
| 362 | Mississippi River No. 08-20-05-01. 21 prints |
| 363 | Mississippi River No. 08-21-05-06. 21 prints. |
| 364 | Mississippi River No. 08-21-05-01. 21 prints. |
| 365 | Mississippi River No. 08-21-05-02. 21 prints |
| 366 | Mississippi River No. 08-21-05-04. 21 prints. |
| 367 | Mississippi River No. 08-27-05-01. 21 prints. |
| 368 | Mississippi River No. 08-28-05-01. 21 prints. |
| 369 | Mississippi River No. 08-23-05-01. 21 prints. |
| 370 | Mississippi River No. 08-21-05-08. 21 prints. |
| 371 | Mississippi River No. 08-21-05-07. 21 prints. |
| 372 | Mississippi River No. 08-21-05-08. 21 prints. |
| 373 | Mississippi River No. 08-21-05-07. 21 prints. |
| 374 | Mississippi River No. 08-21-05-06. 21 prints. |
| 375 | Babylon Chrysalis I. Edition of 3 . |
| 376 | Babylon Chrysalis II. Edition of 3. |
| 377 | Babylon Chrysalis III. Edition of 3. |
| 378 | Babylon Chrysalis IV. Edition of 3. |
| 379 | Babylon Chrysalis V. Edition of 3. |
| 380 | Babylon Chrysalis VI. Edition of 3. |
| 381 | Babylon Chrysalis VII. Edition of 3. |
| 382 | Babylon Chrysalis VIII. Edition of 3. |
| 383 | Tower of Babylon. Edition of 3 . |
| 384 | Babylon |
| 385 | The City of Babylon |
| 386 | Fueling Nirvana: Just What The Fuck Are They Searching For? Edition of 6. |
| 387 | Fueling Nirvana: Just What The Fuck Are They Searching For? Edition of 6. |
| 388 | Babylon Euphoria Diptych |
| 389 | Babylon. Edition of 6. |
| 390 | (Untitled) Mississippi River Valley |
| 391 | Someone Said They Heard Something in the Forest. 6 prints. |
| 392 | Fin du Siecle. 6 prints. |
| 393 | Universe. 6 prints. |
| 394 | Ghost Train I. 6 prints. |
| 395 | Ghost Train II. 6 prints. |
| 396 | Ghost Trains. Installation. |
| 397 | Virtue. 6 prints. |
| 398 | Ghost Train III (Panel 1). 6 prints. |
| 399 | Ghost Train III (Panel 2). 6 prints. |
| 400 | Ghost Train III (Panel 3). 6 prints. |
| 401 | Ghost Train III (Panel 4). 6 prints. |
| 402 | Ghost Train III (Panel 5). 6 prints. |

| | |
|---|---|
| 403 | Ghost Train III (Panel 6). 6 prints. |
| 404 | Ghost Train III (Panel 7). 6 prints. |
| 405 | You Are Being Watched |
| 406 | Cows |
| 407 | Untitled Landscape Painting |

## VARIOUS FINE AND DECORATIVE ARTS
## BOOKS AND ARTIST'S SUPPLIES

| | |
|---|---|
| 1 | 10 Russian samovars of brass. All marked with Imperial Czarist Warrant. 18th and 19th Centuries. @ $650. |
| 2 | A sterling silver samovar heavily chased and repoussed. Highly decorated with scrollwork handles and base. |
| 3 | Landscape painting of Southwest scene by Eve Garrison (American, 1908 – 2003). 32 x 48". Oil on canvas. |
| 4 | Landscape painting of Southwest scene by Eve Garrison (American, 1908 – 2003). 30 x 40". Oil on canvas. |
| 5 | Landscape painting of Southwest scene by Eve Garrison (American, 1908 – 2003). 30 x 40". Oil on canvas. |
| 6 | Chicago Streetscape painting by Eve Garrison (American, 1908 – 2003). 32 x 48". Oil on canvas |
| 7 | Indoor scene with doll painting by Eve Garrison (American, 1908 – 2003). 32 x 48". Oil on canvas. |
| 9 | "Fountain of Time" by Tygve Rovelstad, circa 1930. Charcoal on paper. 28 x 34". Framed. |
| 10 | "Fountain of Time" (Crescent Moon) by Tygve Rovelstad, circa 1930. Charcoal on paper. 28 x 34". Framed. |
| 11 | "Nude Study" by Trygve Rovelstad, circa 1930. Charcoal on paper. 10 x 16". Framed. |
| 12 | "Nude Study" by Trygve Rovelstad, circa 1930. Charcoal on paper. 10 x 16". Framed. |
| 13 | Antique partner's desk, circa 1840, mahogany. |
| 14 | Antique wooden bread bowl, circa 1890. |
| 15 | Three antique Greek wood boats. @ $700. |
| 16 | Norwegian spinning wheel, circa 1850. Pine. 27" wheel. Stands 42" high. |
| 17 | 19th Century bronze sculpture of a woman sitting. Signed Aime Millet (French, 1819 – 1891) |
| 18 | Antique Greek plate, red figure pottery, 4th Century BC. |
| 19 | Two single wood pulleys, circa 1880. Pine and hand-forged metal parts. 10 and 11". Both. |
| 20 | One hay knife, circa 1900. Pine and hand-forged metal blade. 35". |
| 21 | One double wood pulley, circa 1900. Pine and hand-forged metal parts. 15". |
| 22 | Two wood boxes with dovetail corners, circa 1900. Pine, 13 x 8.5". Both. |
| 23 | 4 wood keg spigots, circa 1900. Pine. 9.5 x 8.5 and 8 x 6.5". @ $25. |
| 24 | Wood and screen grain sifter, circa 1900. Pine. 14 x 17.5". |

| | |
|---|---|
| 25 | One hay hook, circa 1900. Pine and hand-forged metal parts. 10". |
| 26 | 2 wood butter molds with dovetailed corners, circa 1900. Pine. 6". @ $50. |
| 27 | 2 wood butter molds with dovetailed corners, circa 1900. Pine. 6". @ $50. |
| 28 | One cutlery tray, circa 1900. Pine. 12 x 21.5". |
| 29 | 12 wood spoons, circa 1900. Pine. @ $20. |
| 30 | One Spikedog wheelwright tool, circa 1900. Pine and hand-forged metal part. 14". |
| 31 | 4 wood planners, circa 1900. Pine and hand-forged metal part. @ $25. |
| 32 | 26 hardcover books on art with numerous color bookplates. @ $100. |
| 33 | Hammers, saws, screw drivers. Group. |
| 34 | Boxes of pastels, acrylic paints, oil paints, aquarelles. Watercolors, charcoal, conte crayon, crayons, tempera, clay, spray paints, thinner, caulk, caulk dispensers, gesso. Group. |
| 35 | Large and small paint brushes. Group. |
| 36 | 8 – 10 rolls raw canvas (60 x 20 ft). Group. |
| 37 | 4 - 5 boxes gold and silver leaf. Group. |
| 38 | 2 boxes of butterflies. Both. |
| 39 | 12 boxes/plastic bottles Venetian glass tesserae from Murano for mosaics. Group. |
| 40 | Large chunks Venetian glass from Murano for sculpture. |
| 41 | 30- 40 white linen sheets (collected for landscape installation). Group. |
| 42 | Miscellaneous tools including staple guns, staples, nails, screws, bolts, scissors, extension cords, lighting fixtures, halogen lights, exacto knives, glues, blades, pencils. Group. |
| 43 | Cut plywood for paintings in various sizes. Group. |
| 44 | Painting stretchers. Group. |
| 45 | Stretched paintings, primed in various sizes. Group. |
| 46 | Mats, glass and frames. Group. |

## COLLECTION OF GREEK ICONS
## OF THE LATE 19th AND EARLY 20th CENTURIES

| | |
|---|---|
| 1 | The Archangel Michael; The Archangel Gabriel |
| 2 | The Ever-Virgin, Theotokos (Mother of God) Hodigitria; Christ – the Pantokrator (All Powerful) |
| 3 | Christ – The Pantocrator |
| 4 | Saint John The Forerunner of Christ (Saint John The Baptist) |
| 5 | Christ – The Pantocrator |
| 6 | The Evangelist, Saint Matthew |
| 7 | The Ever-Virgin Mother of God, Hodigitria (Guide to Salvation) |
| 8 | The Ever-Virgin Mother of God – *Axion Esti* (It is Worthy to Bless Thee, The Virgin) |
| 9 | The Ever-Virgin Mother of God – *Eleusa* (The Virgin of Tender Mercy) |
| 10 | The Hospitality of Abraham – the Old Testament Trinity |
| 11 | The Ever-Virgin Mother of God – *Panagia* – The Mother of The Sign |
| 12 | The Ever-Virgin Mother of God, Hodigitria (*Guide to Salvation*) |

11

| | |
|---|---|
| 13 | The Ever-Virgin Mother of God – Hodigitria (*Guide to Salvation*) |
| 14 | The Ever-Virgin Mother of God – *Eleusa* (The Virgin of Tender Mercy) |
| 15 | Saint George – the Victory Bearer and Wonder Worker |
| 16 | The Crucifixied Christ with the Theotokos, Saints John the Theologian, Demetrios, and George |
| 17 | The New Testament Trinity, an Icon of the Holy Trinity, the Ever-Virgin Panagia, Saints Cyril of Alexandria, Athanasius, and Others |
| 18 | The Mystical Meal – (The Last Supper) |
| 19 | Icon of the New Testament Holy Trinity |
| 20 | The Ever-Virgin Mother of God – Hodigitria (*Guide to Salvation*) |
| 21 | Triptych, Devotional Icon of the Pangia – Glykophilousa;<br>The Archangel Michael, Archistrategos;<br>Saint Nicholas of Myra;<br>The Archangel Raphael – The Healer;<br>Saint Damian the Physician |
| 22 | The Crucified Savior |
| 23 | The Crucified Savior |
| 24 | Devotional Triptych – Theophany;<br>The Theotokos;<br>The Pantokrator;<br>Saint John the Forerunner |
| 25 | Christ – The Pantocrator |
| 26 | The Panagia – Glykophilousa (Mother of God of Tenderness) |
| 27 | Synaxis of Archangels:  Michael, Gabriel, Raphael |
| 28 | Rounded Icon:  The Ever-Virgin Mother of God – Hodigitria (*Guide to Salvation*) |
| 29 | Roundel Icon:  The Axion Estin (Truly You are Worthy) |
| 30 | The Hospitality of Abraham – the Old Testament Trinity |
| 31 | Saint George – the Victory Bearer and Wonder Worker |
| 32 | Christ the Pantokrator with the Four Evangelists |
| 33 | The Ever-Virgin Mother of God – Hodigitria (*Guide to Salvation*) |
| 34 | Saint George – the Victory Bearer and Wonder Worker |
| 35 | Saint George of Lydda |
| 36 | The Archangel Gabriel |
| 37 | Christ – The Pantocrator Enthroned – Christ-the-Teacher |
| 38 | Saint Demetrius of Thessaloniki – the Myrrh-Bearer of Thessalonika |
| 39 | Saints Peter and Paul, Princes of the Apostles –<br>A *Concordia Apostolorum* – the Council of Jerusalem, 48 A.D. |
| 40 | Saints Constantine and Helena – the Holy Great Sovereigns |
| 41 | The Nativity |
| 42 | Deesis |
| 43 | The Hospitality of Abraham – the Old Testament Trinity |
| 44 | Crucifixion |
| 45 | Synaxis of Archangels:  Michael, Gabriel, Raphael |
| 46 | The Harrowing of Hell - Anastasis |
| 47 | The Baptism of Christ – The Holy Theophany of Our Lord |

# ETHNOGRAPHIC OBJECTS

| 1 | Ohand-Made Primative Mexican Oaxaca Wooden Sculpture of a Dragon |
|---|---|
| 2 | Shaman Spirit Mask, Yup'il Eskimo, Circa 1900.  Hand-Carved Wood |
| 3 | African Fertility Male Idol, 19th Century.  Hand-Carved Eroded Lobi Wood |
| 4 | Two Mexican Death Masks, Nanacatlán, Puebla, Circa 1960. Painted Carved Wood |
| 5 | Mexican Mask, Tierra Colorada of San Antonio Rayón, Puebla, Circa 1920. Heavy Carved and Painted Wood, Animal Horns |
| 6 | African Fertility Male Idol, 19th Century. Hand-Carved Ebony Wood |
| 7 | Mexican Mask, Zozocolco De Hidalgo, Veracruz, Circa 1960. Carved and Heavily Painted Wood |
| 8 | Huichol Jlcuri Dance Mexican Mask, Sierra De Nayarit, Circa 1940. Carved Wood and Beads |
| 9 | Native American Lakota Sioux Headdress |
| 10 | Huichol Jlcuri Dance Mexican Mask, Sierra De Nayarit, Circa 1940. Carved Wood and Beads |
| 11 | Jaguar Mask, Coxquihui, Veracruz, Circa 1910. Carved and Heavy Painted Wood, Mirrors, and Leather |
| 12 | Mexican Mask, Zapotitlán, Puebla, Circa 1970. Woven in Straw |
| 13 | Mexican Mask, Puebla, Circa 1950. Carved and Heavily Painted Wood |
| 14 | Beembe (Southern Congo) or Tanzania Mask, 19th Century |
| 15 | African Fertility Male Idol, 19th Century. Hand-Carved Ebony Wood |
| 16 | Eskimo Inuit Mask, 19th Century, Heavy Carved Wood |
| 17 | Devil Mask, Circa 1920. Carved and Heavy Painted Wood, Animal Horns |
| 18 | Mexican Mask, Circa 1930. Carved and Heavy Painted Wood and Horse Hair |
| 19 | Eskimo Carved Wooden Doll, 19th Century |
| 20 | Papier Mache Mexican Day of the Dead Masks, Skulls, Statues |

13

MR. MCGRATH: I believe it is duplicative of No. 6.

MS. BRYAN: Yes, it is.

MR. MINETZ: We will withdraw 9.

THE COURT: 9 is withdrawn.

Anything else?

MR. MINETZ: The verdict forms.

THE COURT: Right. I have Plaintiff's revised verdict forms.

MR. MCGRATH: Right. That's Docket 243-19.

THE COURT: And what's the Defendants' objections?

One thing I see is we need two more lines on the signature page.

MR. MCGRATH: Oh, that's right.

Also, your Honor, there is a page in here for punitive damages, which we have withdrawn that. So that can come out.

MR. MINETZ: So, counsel, are you still at 414.17.

MR. MCGRATH: Yes.

MR. MINETZ: Okay.

THE COURT: All right. So you are going to withdraw the eighth item, and then you will have to change 9 to 8 and 10 to 9?

MR. MCGRATH: Correct.

MR. MINETZ: So, your Honor, there are two major issues as I recall. When counsel submitted his revised forms,

we had a question as to whether or not there was an issue of double counting, and I believe counsel solved that problem, and I don't know if that affects both the verdict form or the formula we gave you for the judgment. I also recollect that the Plaintiff's form does not have a jury verdict on the abandonment defense to the common law claims.

MR. MCGRATH: Say that again?

MR. MINETZ: I don't think your form has a jury verdict on the affirmative defense of abandonment because at that time you took the position that abandonment was not an affirmative defense to either claim. So that's why we think our revised verdict forms, and we have one with punitive damages and one without punitive damages, solve the problem.

MR. MCGRATH: Your Honor, I can explain a little bit. That might help clarify things for you on this question of double recovery.

THE COURT: Okay. Wait a minute.

MR. MCGRATH: The Copyright Act, there are cases out there that indicate, you know, an infringement of a copyright where you are getting statutory damages does not preclude you from having a claim for, say, in the same product or something similar, a trademark claim, and the court say, "Well, those are two different claims, so you can have statutory damages on your copyright infringement."

THE COURT: Excuse me. I don't want to break your

stride, but I do not, for some reason, have the Defendants' proposed verdict forms.

I think 9 also has to be withdrawn, doesn't it? 8 deals with --

MR. MCGRATH: Oh, yes. Well, let's see. Yes, any punitive damages items.

THE COURT: So 8 and 9 both?

MS. BRYAN: 8, 9, and 10, your Honor, if that's -- I didn't hear you say that earlier. It is all of 8, all of 9, and all of 10 --

MR. MCGRATH: Yes.

MS. BRYAN: -- would go.

MR. MCGRATH: I agree, all of those would be withdrawn.

THE COURT: All right.

MR. MCGRATH: Now, the point I was making, without getting too complicated, there are some cases that suggest you can recover under copyright and in the same case also recover under trademark, and at this point we are not going to -- we are not trying to recover for VARA works, that a VARA work could recover both under VARA and under the common law. To the extent that's double counting, we are not asking for that.

So, in other words, I believe if they awarded actual damages and VARA damages, whichever the lesser would simply be deducted out. So we are not trying to double recover. I

think that's probably clear in the instructions as they stand.

THE COURT: All right. With that understanding, do we need any change?

MR. MINETZ: Yes. There is no verdict form that allows me to win on the affirmative defense.

THE COURT: Oh.

MS. BRYAN: Yes, that's the remaining issue. So our verdict form, your Honor, the way that we address it is that we make it the very first question. The very first question is "Do Defendants meet their burden of proof on the affirmative defense of abandonment?" Everything else in this verdict form, with the exception of how you then proceed, so that the bold language in both ours and Plaintiffs, everything else as far as the form of the verdict is the same. So their No. 3 is exactly the same as our No. 4.

The only issue is we need something in there that says that it allows the jury to rule in our favor on abandonment and then where it is going to be put because we put it at the front. It changes very slightly the instructions that then follow each question because, for example, if you answer yes to Question 1, they still have to answer the VARA question, but they don't have to answer the common law questions. So we make that clear in our instructions, whereas Plaintiff omits those types of things. It doesn't say if you found in favor of Defendants' on their

App. 46

it was.

The next one, please, here is the Galleri Ramfjord. Again, the first one, €30,000 equals to $39,000.

And the last one, this one was here in the United States, Finlandia University, lead crystal items, $20,000. Arabesque down there, $30,000. So these are real numbers. This is coming from Finlandia University. People aren't just making these numbers up here. They are actual numbers used in the world, in the real world.

So that brings us, then, in the battle of the experts to the bottom line, and it is quite a disparity. As you heard Ms. Bardo conclude that for all the works, not just talking about the VARA works, but all the works in the entire case, her value was $11 million. Mr. Rosoff's value for all the works, $8,900. Now, I suggest that if you compare Ms. Bardo's four volumes and her careful details to Mr. Rosoff's two and a half pages, you will agree that she made much more of a good faith effort to try to come up with real values for these paintings and the artwork, all the artwork, than Mr. Rosoff, who kind of did a slipshod, lumping a bunch of different works together into categories and saying that paintings from exhibitions are worth $50. I think her good faith comes through. His good faith does not come through.

I also want you to understand that this is not an all-or-none situation, and this is part of your hard job.

This is not, "Well, yes, we agree with Bardo on the one hand," or "Yes, we agree with Mr. Rosoff." You have the right here to come up -- listening to the evidence, taking what guidance you can from the experts, taking guidance from the testimony that you heard, it is in your hands, as I said in the opening, to come up with what you think is a fair compensation for the lost Art that will compensate Christian for, basically, his life's work prior to 2010 being destroyed.

So as I say, it is not all or nothing. If there is things that you saw that you conclude one way or another it shouldn't be included, you can do that. If you think, for example, the Mexican masks were not jointly owned by Christian and Mr. Karalias, well, you can say, "Okay, we will just leave them out of our analysis." You can do that. In the end, you want to be listening -- or, collectively, use your collective wisdom to come up with numbers where you include what should be included, if anything should be excluded. You have the right to do that.

All right. Last, but certainly not the easiest part, is I want to kind of walk you through the verdict form. As you can imagine in a case like this with lots of different issues, and there is legal things that can bring you down different paths and so forth, it can be a little bit daunting, but it is not as bad as it may seem.

So if you could put up the first page.

So after you have deliberated, you are going to have a verdict form, and it is kind of like a questionnaire that you can just kind of go step-by-step and go through it and answer the questions, and from your answers to the questions, we will eventually get the results in our case.

So the very first thing, of course, you need to decide -- and the first points on here, because there is more questions to be answered, is the Visual Artists Rights Act claim. So the first thing, Question No. 1, is simply did the Plaintiff prove the claim, were all the elements satisfied in your mind, those five elements. So you make your choice either for the Plaintiff or for the Defendants.

If you find that we have met all the elements, and you rule -- your verdict is for the Plaintiff, then you have to answer Questions 2 and 3, and these are about damages.

Now, with VARA, there is two different kinds of damages, and you will be able to look this over and study it, and the Judge will be instructing you, too. But there is two different types of damages that Plaintiff may recover. One is what we call "actual damages," and there we are talking about the things that Bardo and Rosoff were talking about. We are talking about the market value, what are these works worth, whether they have been sold or not sold. There is value, and of course we think Ms. Bardo's values are far closer to reality than Mr. Rosoff's.

So Question 2 then is focusing on that, what are the actual damages of the VARA works. We are just here in these early questions talking about the VARA works. So in that question -- so Plaintiff's Exhibit 36, again, is the list of all the VARA works. Now, if you looked at Bardo's report and took the values out of her report for each of the VARA works on Exhibit 36, that would come down to a number of $5,201,000. So that is basically Bardo's value for the VARA works.

Again, it is not an all-or-nothing. If you think $5 million at this point is too high for the VARA works, you can lower that somewhat. You won't get any guidance from Mr. Rosoff's report, unfortunately, because he didn't even separate out the VARA works from the other works.

All right. So that's the actual part of it.

Now, the VARA statute also has something that are called "statutory damages," and that is damages that you, the jury, can set based on a range that's written right into the statute, right into the law, and the purpose of that is specifically it can be useful in a case such as this where -- you know, a lot of Art destruction cases, it is hard to valuate the works. We know that much is the case here.

So an alternative the court gives is that the jury is entitled to use these ranges that the statute provides. So it is an either/or thing. Either the Plaintiff can, if there is awards in his favor, he can see either what your actual

damages conclusion is and compare that to your conclusions on these alternative statutory damages, and then that choice is made later. Obviously, most likely, the higher of those two numbers would be the award the Plaintiff would accept.

Now, what are these ranges I'm talking about? So the basic range is that for each work, and this is all counted by each work and the number of works involved, your basic range is from $750 per work, and it can go up to $30,000 per work. So that's your basic range.

Now, there is another situation -- two other situations. One is if you think the destruction was not only intentional, but if you felt this was willful, then you can even go above $30,000. If you think the destruction was innocent, you can go a little bit the other way. You can go as low as $200 per work. And it is not that you have to go down. You could find innocent infringement and still award an amount that's in the basic category, but you have the right under the statute to lower it to 200 per work if you think it was a completely innocent infringement.

We think the choice is yours, of course. We think somewhere in the basic range is where the result should be in this case. And, again, you can consider the Bardo report as some guidance, those numbers, when you are looking at what you think about the ranges that are discussed here.

Okay. So then you are asked to specify a few

questions. "Did you consider that this was a willful violation?" Yes or no. "Did you think it was an innocent violation?" Yes or no.

And then in Item D there, you will see, and this is important, here you have to make a finding of how many VARA works you think there were, and as we have showed you on Exhibit 36, the number of VARA works that we put into evidence and supported with the testimony is 1,457. So that's the number you are going to want to put in on -- I'm sorry, that's Line C, how many works of visual Art were destroyed.

Then on D, you simply -- you figure out number of works, the amounts within the range that you want to apply to the works, and that's your ultimate statutory damage award, and you can either just use the same number within the range for every work or you can discriminate, some works are more important, we are going to give those a higher price. That's up to you. That's completely up to you.

All right. And then moving on to the next page -- so that's the first part you need to handle, and that's the VARA. Then as you go to the next page, now we are into the other three claims, the abandonment, the trespass, and the conversion -- I'm sorry, the trespass, the conversion, and the negligence. But the first question there that you are asked to answer is did you feel that the Defendants proved abandonment, yes or no.

If you answer yes, there was abandonment, then there is no recovery by the Plaintiff under these three claims. If you answer no, then you have to continue on and answer the questions on 5, 6, and 7. As Mr. Wolf showed, we feel we have proved every element that was necessary to prove for those, so your verdict on those should be in favor of the Plaintiff.

And then there is just one more question, which is the final question, then, if you found in favor of the Plaintiff against the Defendants on these three claims, then you are asked for a number of the actual damages. So you have heard about the actual damages. Again, remember, this is the whole group on this page, this No. 8 here. This is the whole group of works, icons, paintings, paintings by Eve Garrison, you know, everything that is included in the entire collection. And one of the Bardo exhibits is just that, it is every work listed with the values on the right-hand column, and that's what comes out to $11 million.

Now, in this No. 8, you still should include the VARA works in this. This is asking for all the works, No. 8, but nobody is trying to get paid twice here. If you awarded actual damages for the VARA works on the earlier question, and you award them on this question, that would be subtracted out of this. The Judge will do this. So you won't have to worry about anyone double counting or anything like that.

So with that, I thank you for your attention. I'm

sorry this all took so long, but it is a little complicated, and we want to make sure you are clear on all this. So thank you very much.

THE COURT: All right. Folks, we will take a break for the morning. As jurors in this case, you are not to discuss the case among yourselves or with anyone else or permit anyone to discuss it in your presence. There will be a time when you will be able to do it. It is coming soon. And when I release you for your deliberation, you will be able to talk about this case to your heart's content. But until that time, you are not to discuss the case among yourselves. Do not do any independent research or investigation. If someone tries to contact you either directly or indirectly about your service in this case, notify me or Mr. Pirages immediately.

Let's come back at five after 11:00, and at that time, we will proceed with the Defendants' closing argument.

(Brief pause.)

(The following proceedings were had in open court, out of the presence and hearing of the jury:)

THE COURT: All right. We will come back at five after 11:00. I'm wondering whether the Defense would like to break at some time during your closing argument to go to lunch or whether you just want me to push through.

MR. MINETZ: I think we should push through and give it to the jury before lunch. I think we should push through

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWICZ-LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 1826 |
| | ) | |
| KEVIN C. DOYLE, PAMELA DOYLE, | ) | The Honorable Frederick J. Kapala |
| JOHN T. DOYLE TRUST A, JOHN T. | ) | |
| DOYLE TRUST B, and JOHN DOES 1-5, | ) | Magistrate Judge Iain Johnston |
| | ) | |
| Defendants. | ) | |

## VERDICT FORM

## COUNT I -- PLAINTIFF'S VISUAL ARTISTS RIGHT ACT CLAIM

1. On Plaintiff's claim against Defendants for violation of the **Visual Artists Rights Act ("VARA")**, we find for: [check one].

   Plaintiff  **X**   OR  Defendants  _____

   **If you found for Plaintiff against Defendants on Count I, you must answer both Question 2 and Question 3.**

   **If you found for Defendants against Plaintiff on Count I, you must go directly to Question 4.**

2. What amount of actual damages do you award Plaintiff for violation of VARA?

   Actual Damages for VARA property destroyed by Defendants:

   $ **120,000.00**

3. As an alternative to actual damages, the Plaintiff may elect to recover statutory damages. The amount of statutory damages must be between $750 and $30,000 for each work of visual art of recognized stature that you found to be destroyed. However, if you find that Defendants willfully infringed Plaintiff's rights under VARA, then you may, but are not required to, increase the statutory damage award to a sum as high as $150,000 per work of visual art. If you find that Defendants innocently infringed Plaintiff's rights under VARA, then you may, but are not required to, reduce the statutory damage award to a sum as low as $200 per work of visual art.

In determining an amount of statutory damages, you must answer questions 3.(a), (b), (c), (d) and (e), below.

   (a) Did Defendants willfully violate Plaintiff's rights under VARA?
       YES \_\_\_   OR   NO **X**

   (b) Did Defendants innocently violate Plaintiff's rights under VARA?
       YES \_\_\_   OR   NO **X**

   (c) How many works of visual art do you find were destroyed?  **4**

   (d) What is the total amount of statutory damages you award to Plaintiff for the works of visual art destroyed? $ **170,000.00**

   (e) If you answered YES to question 3(a), what is the total amount of the *increase* in the statutory damages, if any, that you included in the award set forth in question (d) above? $ **N/A**

**Proceed to next page.**

**DEFENDANTS' AFFIRMATIVE DEFENSE OF ABANDONMENT (In relation to Counts III, IV, and V)**

4.   Did Defendants meet their burden of proof on the affirmative defense of abandonment?

Yes _____   OR  No __X__

**If you answered yes, you must go directly to the signature page.**

**If you answered no, you must go directly to question 5.**

### COUNT III -- PLAINTIFF'S TRESPASS CLAIM   (There is no Count II)

5.   On Plaintiff's claim against Defendants for **trespass**, we find for: [check one].

Plaintiff __X__   OR  Defendants _____

### COUNT IV -- PLAINTIFF'S CONVERSION CLAIM

6.   On Plaintiff's claim against Defendants for **conversion,** we find for: [check one].

Plaintiff __X__   OR  Defendants _____

### COUNT V -- PLAINTIFF'S NEGLIGENCE CLAIM

7.   On Plaintiff's claim against Defendants for **negligence,** we find for: [check one].

Plaintiff __X__   OR  Defendants _____

8.   If you found in favor of the Plaintiff against the Defendants on any of the Plaintiff's claims for trespass, conversion or negligence, state the amount of actual damages you award the Plaintiff against the Defendants:

$ __300,000.$^{00}$__

**Proceed to next page.**

**Signature Page**

**This concludes the verdict form.**

Foreperson: _[handwritten signatures]_

Dated: **10/3/2017** _____

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWICZ-LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 1826 |
| | ) | |
| KEVIN C. DOYLE, PAMELA DOYLE, | ) | The Honorable Frederick J. Kapala |
| JOHN T. DOYLE TRUST A, JOHN T. | ) | |
| DOYLE TRUST B, and JOHN DOES 1-5, | ) | Magistrate Judge Iain Johnston |
| | ) | |
| Defendants. | ) | |

## <u>JURY INSTRUCTIONS</u>



1

App. 53

## JURY INSTRUCTION NO. 42

If you find that Plaintiff has proved that Defendant has violated Plaintiff's rights under the Visual Artists Rights Act, then you must determine the amount of damages, if any, Plaintiff is entitled to recover.

If you find that Plaintiff has failed to prove the claim, then you will not consider the question of damages.

Plaintiff must prove damages by a preponderance of evidence.

Plaintiff may recover for any actual losses he suffered because of the destruction of works of visual art of recognized stature. Alternatively, Plaintiff may recover an amount called "statutory damages." I will define these terms in the following instructions.

## JURY INSTRUCTION NO. 43

When I say "actual losses" under the Visual Artists Rights Act, I mean the amount of money which will reasonably and fairly compensate him for the following proposition of damages proved by the evidence to have resulted from the acts of the Defendants: The loss from the destruction of Plaintiff's works of visual art of recognized stature, determined by the fair market value of the property immediately before the occurrence.

Whether this proposition of damages has been proved by the evidence is for you to determine.

## JURY INSTRUCTION NO. 44

When I say "statutory damages" under the Visual Artists Rights Act, I mean an amount that you find to be fair under the circumstances. The amount must be between $750 and $30,000 for each work of visual art of recognized stature that you found to be destroyed.

However, if Plaintiff proves that any Defendant willfully violated Plaintiff's rights under the Visual Artists Rights Act, then you may, but are not required to, increase the statutory damage award to a sum as high as $150,000 per work of visual art. A violation of the Act is considered willful if Plaintiff proves that Defendant knew that the actions constituted a violation of Plaintiff's rights under the Act or acted with reckless disregard of Plaintiff's rights.

In addition, however, if Defendants prove that they innocently violated Plaintiff's rights under the Visual Artists Rights Act, then you may, but are not required to, reduce the statutory damage award to a sum as low as $200 per work of visual art. A violation of the Act is considered innocent if Defendants prove that they did not know, and had no reason to know, that their acts constituted a violation of Plaintiff's rights under the Act.

In determining the appropriate amount to award, you may consider the following factors:

- the expenses that Defendant saved and the profits that he earned because of the destruction;
- the revenues that Plaintiff lost because of the destruction;
- the difficulty of proving Plaintiff's actual damages;
- the circumstances of the destruction; and
- deterrence of future violations.

45

**App. 56**

## JURY INSTRUCTION NO. 45

Plaintiff also seeks damages under three state law claims, namely, Count III for trespass, Count IV for conversion, and Count V for negligence.

If you find that Plaintiff has proved that any Defendant is liable under one or more of these Counts, then you must determine the amount of damages, if any, Plaintiff is entitled to recover.

If you find that Plaintiff has failed to prove his claim under any of these Counts, then you will not consider the question of damages.

Plaintiff must prove damages by a preponderance of evidence.

If you decide for the Plaintiff on the question of liability under any of these state law claims, you must then fix the amount of money which will reasonably and fairly compensate him for the following proposition of damages proved by the evidence to have resulted from the conduct of the Defendant: The loss from the destruction of any of Plaintiff's personal property or any property which he was holding for others, determined by the fair market value of the property immediately before the occurrence.

Whether this proposition of damages has been proved against any Defendant by the evidence is for you to determine.

46

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Christian K. Narkiewicz-Laine, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 11 C 1826 |
| | ) | |
| Kevin C. Doyle, et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion to bifurcate [282] is granted. Parties to each submit a brief on the issue of who should be considered the prevailing party for purposes of 17 U.S.C. § 505 by 1/12/2018. Responses due by 1/26/2018. Any pending deadlines with respect to a petition for attorney's fees and costs are stayed until further notice. This order has no effect on the time to file a notice of appeal from the judgment. See Local Rule 54.3(c). Presentment of the motion to bifurcate [282] and defendants' motion for attorneys' fees [283], currently scheduled for 12/29/2017, is canceled.

Date: 12/22/2017                    ENTER:

_____

FREDERICK J. KAPALA

District Judge

**App. 58**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Christian K. Narkiewicz-Laine, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 11 C 1826 |
| | ) | |
| Kevin C. Doyle, et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Plaintiff's motion for new trial, for judgment notwithstanding the verdict, and to alter judgment [286] is denied. Defendants' motion for attorney fees and expenses [283] is denied.

## STATEMENT

Currently before the court are several post-trial matters. Plaintiff has filed a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative a motion for new trial pursuant to Rule 59(a), arguing that the jury's verdict—which resulted in a judgment in favor of plaintiff—was against the manifest weight of the evidence. Plaintiff also moves to amend the judgment pursuant to Rule 59(e) in order to add prejudgment interest. Finally, the parties have submitted briefing on the issue of attorney's fees in which both parties claim to be the prevailing party entitled to a fee award. As explained below, each of these requests is denied and the court's judgment will stand, with each party to bear their own costs.

### I. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Rule 50(a) allows the court to grant a motion for judgment as a matter of law against a party if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on a particular issue. Fed. R. Civ. P. 50(a). During the trial, plaintiff filed a motion under Rule 50(a) seeking a judgment as a matter of law in his favor on his claim under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A, raised in Count I of the second amended complaint.[1] The court denied the motion, noting that there was sufficient expert testimony presented by defendants for the jury to find that there were no works of recognized stature located in the storage unit at the time plaintiff's items were discarded.

Pursuant to Rule 50(b), plaintiff has now filed a renewed motion for judgment as a matter of law on Count I, in which he contests the amount of damages he received on that count. The jury

---

[1]Plaintiff also sought a judgment as a matter of law on defendant's affirmative defense of abandonment, but that is no longer at issue in this case given the jury's verdict on the state-law claims.

**App. 59**

found that only four works of recognized stature were destroyed by defendants and awarded plaintiff a total of $120,000 in statutory damages. In his motion, plaintiff asserts that "no reasonable jury could find that Defendants destroyed only four VARA-qualified works," and that the evidence presented at trial established that defendants "destroyed far more than four" of plaintiff's "VARA-qualified works."

Under Rule 50(b), the court considers "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." E.E.O.C. v. Mgmt. Hosp. of Racine, Inc., 666 F.3d 422, 431 (7th Cir. 2012). The court is "obliged to leave the judgment undisturbed unless the moving party can show that no rational jury could have brought in a verdict against him." Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 926 (7th Cir. 2004). Moreover, the court "must accord substantial deference to a jury's determination of compensatory damages." Ramsey v. Am. Air Filter Co., 772 F.2d 1303, 1313 (7th Cir. 1985).

At trial, plaintiff attempted to show through the testimony of his expert witnesses that all 1,457 works of art listed in Plaintiff's Exhibit #36 and depicted in Plaintiff's Exhibit #52 should be considered works of recognized stature entitled to protection under VARA. But the fact that plaintiff may have presented evidence to support his claim does not mean that the jury was required to accept that evidence in its entirety. For example, the jury could have rationally determined that it was impossible to declare a work to be of recognized stature when there was no photograph of the original work available for plaintiff's experts to view or evaluate. Nearly half of the claimed VARA works in Plaintiff's Exhibit #36 do not have a corresponding image depicted in Plaintiff's Exhibit #52.[2] At a minimum, the jury may have disregarded those works of art when determining which works qualified as having recognized stature. In addition, the jury could have simply disagreed with plaintiff's experts on any of the other works that were included in the list, especially considering that their testimony on this issue was general and did not address specific details about each claimed work of recognized stature. See Walker v. Sheahan, 526 F.3d 973, 979 (7th Cir. 2008) ("[A] reasonable jury could disagree with [one party's] expert and accept [the other party's] version of the events."). For example, the jury may have determined that plaintiff's photographs of various buildings and structures, which comprised a large portion of the claimed works of recognized stature, did not rise to the level of recognized stature. Such a finding would have been consistent with, and supported by, the testimony of defendants' expert witnesses who opined that none of plaintiff's works of art were of recognized stature. The jury also could have rationally rejected the idea that every single work of art created by plaintiff met the standard of recognized stature considering that he had never sold any of his artwork. Finally, and perhaps most importantly, the jury was not required to simply accept plaintiff's testimony that all of the works listed in Plaintiff's Exhibit #36 were present at the time that defendants cleaned out the storage unit. A rational jury certainly could have concluded that it was unlikely plaintiff stored nearly 1,500 works of recognized stature in a storage unit with no electricity, no working climate control system, and no written inventory or

---

[2]Plaintiff's Exhibit #36 lists a total of 255 works of art, but 109 of those works include only a "No Photograph Available" image in Plaintiff's Exhibit #52. When all of the duplicate prints are included, the total count becomes 1,457 works, with 640 of those works without any visual depiction.

2

insurance coverage for the works, especially given the testimony of defendants and others concerning the dirty condition of the storage unit at the time it was emptied.

Ultimately, plaintiff claims in his renewed motion for judgment as a matter of law that the jury was required to accept the blanket conclusions offered by his experts that every work of art listed in Plaintiff's Exhibit #36 qualified as a work of recognized stature, but that is simply not the case. The evidence presented, and the inferences that can be drawn therefrom, was sufficient to support the jury's verdict that only four works of recognized stature were intentionally destroyed by defendants. Under these circumstances, the court is required to leave the judgment undisturbed, and plaintiff's Rule 50(b) motion is denied.

## II. MOTION FOR NEW TRIAL

Plaintiff's alternative request for a new trial fails for similar reasons. Under Rule 59(a), "[a] court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." Willis v. Lepine, 687 F.3d 826, 836 (7th Cir. 2012). A motion for new trial under Rule 59(a) claiming insufficient damages will be denied and the court "will uphold a jury's verdict as long as there is a reasonable basis in the record to support it." Frizzell v. Szabo, 647 F.3d 698, 702 (7th Cir. 2011). The court reviews "the damages evidence in the light most favorable to the jury's verdict, and the verdict must stand unless there is no rational connection between the evidence and the jury's award." McNabola v. Chi. Transit Auth., 10 F.3d 501, 516 (7th Cir. 1993).

As noted above, the jury was not required to accept plaintiff's evidence and could have rationally concluded that there were only four works of recognized stature that were destroyed by defendants. Indeed, a review of the testimony of Kevin and Pamela Doyle, the two primary defendants in this case, provides sufficient support for the jury's verdict. At trial, Kevin Doyle identified only two paintings that he had seen at the storage unit and that were thrown into the dumpster: "Father, Son, and Holy Ghost, 2002" and "The Universe is Burning, 2002."[3] Pamela Doyle's testimony is not as precise when viewed through the trial transcript, although she did testify about one exhibit that was shown to her, but never identified by name, as a "piece of artistic material" that she had seen in the storage unit and had thrown into the dumpster. She also recalled seeing "some posters with words written on them sort of like this exhibit," which she later identified on cross-examination as the "Refugee" poster.[4] Given this testimony, the jury could have determined, without resorting to a compromise verdict as plaintiff suggests, that there were only four works of recognized stature in the storage unit that were intentionally destroyed by defendants. Accordingly, the court cannot say that the jury's verdict was against the manifest weight of the

---

[3]The court notes that there are two works of art titled "The Universe is Burning, 2002," which are listed in Plaintiff's Exhibit 36 as #285 and #290. Kevin Doyle appears to be discussing #290, which was a painting on plywood, whereas plaintiff described #285 during his testimony as "one of [his] most important exhibitions" because it was the "high moment of [his] career as a landscape painter." It is possible the jury determined that both of these paintings were destroyed.

[4]Pamela Doyle also acknowledged that "there were some things rolled up in tubes" that were discarded, but she did not know whether those tubes contained any paintings.

3

evidence or order a new trial on this basis.

In his motion for new trial, plaintiff also argues that he was severely prejudiced by various evidentiary errors during the trial. As an initial matter, it is difficult to say that plaintiff suffered any prejudice as a result of this court's evidentiary rulings given that the jury returned a verdict in his favor on all counts. Plaintiff has identified certain evidentiary rulings that he believes were adverse to his position and potentially prejudicial, but he has not explained how that prejudice materialized. Indeed, the only thing plaintiff could complain about is the amount of damages that were awarded to him, but there is no argument in his motion linking any of the alleged evidentiary errors to the jury's determination of damages. Accordingly, the court could deny the motion for new trial on this basis alone.

In any event, the court has reviewed the claimed evidentiary errors and finds no basis to order a new trial in this matter. Plaintiff first argues that the court erred in allowing testimony concerning plaintiff's conviction that was over ten years old. This issue was thoroughly analyzed by the court in response to plaintiff's motion in limine #1, as well as his motion to reconsider that initial ruling, and the court stands by its determination that plaintiff's 2003 conviction was admissible under Rule 609. The jury was entitled to consider this evidence for purposes of impeachment and nothing that unfolded during the trial alters this conclusion.

Next, plaintiff alleges that the cumulative effect of several other evidentiary errors was prejudicial. In order to prevail on a "cumulative effect" argument, plaintiff must show: "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered [the] trial fundamentally unfair." Christmas v. City of Chicago, 682 F.3d 632, 643 (7th Cir. 2012). Plaintiff is unable to meet this burden. In his motion, plaintiff asserts, without much argument or any citation to legal authority, that the court erred by (1) allowing evidence of plaintiff's wealth, (2) allowing evidence concerning the Pulitzer Prize Committee, (3) precluding plaintiff from testifying about certain insurance valuation documents, and (4) allowing defendants to present evidence of postcards of various Chicago landmarks. After consideration, the court stands by its rulings and finds no error with regard to any of these issues. The evidence concerning plaintiff's wealth was minimal but was nevertheless relevant to the issue of whether plaintiff could have procured insurance for his works of art that were allegedly destroyed by defendants. The issue concerning the Pulitzer Prize Committee was also a minor one, but it was fair for defendants to clarify the scope of that alleged accolade as it may have been relevant to whether plaintiff's works of art should be considered to have recognized stature. As for the insurance valuations, this issue was addressed before trial within the context of defendants' motion in limine #1, and the court continues to believe that the value plaintiff placed on his own works of art that were exhibited or donated after the destruction of plaintiff's property was not relevant and would have been an improper subject for plaintiff to testify about since he was not qualified as an expert in the field of art appraisal. Finally, the court finds no error in allowing defendants to present evidence of commercially-available postcards to compare and contrast to certain photographs that plaintiff claimed should be considered works of recognized stature. Accordingly, the court finds no error in any of the issues identified by plaintiff in his motion for new trial. Moreover, even if one or more of the court's evidentiary rulings could be considered erroneous, there is nothing to credibly suggest that these errors were so severe, either individually or cumulatively, that the trial became

fundamentally unfair as a result.

Finally, without presenting any new argument on the subject, plaintiff asserts that the court erred in reducing the damages that were awarded by the jury. This undeveloped argument, in which plaintiff essentially asks the court to reconsider its ruling on the proper amount of damages, is insufficient and provides no basis for a new trial.

For all these reasons, plaintiff's motion for new trial is denied.

### III. MOTION TO ALTER OR AMEND JUDGMENT

In his motion, plaintiff also asks the court to amend the judgment to include an award of prejudgment interest. "[A] motion for prejudgment interest filed after entry of a final judgment is a motion to alter or amend the judgment under Rule 59(e)." McNabola, 10 F.3d at 520. "Rule 59(e) motions may not be used to make arguments that could and should have been made before the district court rendered a judgment." Miller v. Safeco Ins. Co. of Am., 683 F.3d 805, 815 (7th Cir. 2012). Here, because plaintiff never raised the issue of prejudgment interest in the final pretrial order, either in his statement of damages or his trial brief, the court declines to consider the issue. See First State Bank of Monticello v. Ohio Cas. Ins. Co., 555 F.3d 564, 572 (7th Cir. 2009) ("The district court was entitled to conclude that raising the issue of prejudgment interest for the first time in a Rule 59(e) motion, after summary judgment was entered, was too late."); Thorne v. Member Select Ins. Co., No. 2:09-CV-87-JEM, 2017 WL 1089211, at *3 (N.D. Ind. Mar. 22, 2017) (declining to address the merits of the plaintiff's request for prejudgment interest in a Rule 59(e) motion, even though it was "mentioned" in his complaint).

Even if the court considers the issue, however, there is no basis for an award of prejudgment interest in this case. Turning first to plaintiff's VARA claim, it is undisputed that the statute does not provide, one way or the other, for an award of prejudgment interest for this type of claim. Plaintiff instead relies on a general rule that "prejudgment interest should be presumptively available to victims of federal law violations." Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989). This presumption, however, does not mean that an award of prejudgment interest is required in every case.

In this case, plaintiff elected an award of statutory damages on his VARA claim. The Seventh Circuit has concluded, albeit under a different statute, that when a plaintiff has been "awarded statutory damages, prejudgment interest would be inappropriate." Matter of Marshall, 970 F.2d 383, 386 (7th Cir. 1992). Although plaintiff cites some authority from outside this circuit suggesting that a district court can, in its discretion, still award prejudgment interest under the Copyright Act for statutory damage awards, see, e.g., Barclays Capital Inc. v. Theflyonthewall.com, 700 F. Supp. 2d 310, 329 (S.D.N.Y. 2010), rev'd in part, 650 F.3d 876 (2d Cir. 2011), this court is required to follow the Seventh Circuit precedent unless and until it has been overturned.

In any event, even if the court could award prejudgment interest on the statutory damages, the court does not believe that it would be appropriate in this case. As reflected in the verdict form, the jury specifically found that defendants did not willfully violate plaintiff's rights under VARA, and there is no indication whatsoever that defendants intentionally delayed the trial or otherwise sought to increase the harm to plaintiff. Moreover, under the unique facts of this case, the

destruction of plaintiff's artwork did not deprive plaintiff of any actual money, since he did not sell his artwork, and therefore an award of prejudgment interest is not necessary to fully compensate plaintiff for his loss or otherwise ensure that plaintiff is not deprived of the time-value of money. For all these reasons, even if prejudgment interest is available on the statutory damages award for plaintiff's VARA claim, the court would in its discretion decline to include this amount in the judgment, as it would result in a windfall for plaintiff.

As for plaintiff's state-law claims, there is even less basis for an award of prejudgment interest. In his motion, plaintiff relies on Section 2 of the Illinois Interest Act, 815 ILCS 205/2, but the Seventh Circuit has held that "the Illinois Interest Act does not provide for pre-judgment interest in tort cases," Westchester Fire Ins. Co. v. Gen. Star Indem. Co., 183 F.3d 578, 585 (7th Cir. 1999), and plaintiff's attempt to establish otherwise is not persuasive. In any event, even if that statute did authorize an award of prejudgment interest in this case, it would only apply if plaintiff could establish an "unreasonable and vexatious delay of payment," which he has not done. 815 ILCS 205/2; see also Telemark Dev. Grp., Inc. v. Mengelt, 313 F.3d 972, 986 (7th Cir. 2002) ("[A]n honest dispute as to the existence of a legal obligation will not result in an unreasonable and vexatious delay which would permit recovery of interest."). Here, plaintiff took an unfortunate landlord-tenant dispute and morphed it into a demand for more than $11 million in damages from defendants. Under these circumstances, defendants cannot be faulted for defending themselves against plaintiff's claims. Accordingly, the court also declines to award prejudgment interest on plaintiff's state-law claims.

For all these reasons, plaintiff's motion to alter or amend judgment to include prejudgment interest is denied.

## IV.  MOTION FOR ATTORNEY'S FEES

As a final matter, both parties have filed a position paper on the issue of attorney's fees and costs with respect to the VARA claim advanced in Count I of plaintiff's second amended complaint. The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Given this language, the Supreme Court has explained that "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994); see also Riviera Distribs., Inc. v. Jones, 517 F.3d 926, 928 (7th Cir. 2008) (concluding that "§ 505 treats both sides equally and allows an award in either direction").

In their position papers, both sides argue that they should be considered the prevailing party entitled to attorney's fees and costs. At first blush, this appears to be a simple issue as plaintiff received a judgment in his favor and will be entitled to collect a total of $300,000 in damages from defendants. The Supreme Court has explained that the term "prevailing party" is a "legal term of art" which requires "a court-ordered change in the legal relationship between the plaintiff and the defendant," such as an enforceable judgment on the merits. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001); see also Riviera, 517 F.3d at 928 ("[A] litigant prevails (for the purpose of fee-shifting statutes) when it obtains a material alteration of the legal relationship of the parties."). The analysis in this case, however, is not so simple.

6

**App. 64**

As defendants correctly point out in their filings, plaintiff's VARA "claim" in Count I was actually numerous claims joined into one count. Plaintiff sought to recover for the destruction of 1,457 alleged works of recognized stature, and he prevailed, but only as to four of those works of art. Defendants, on the other hand, successfully defended against plaintiff's claims with respect to the other 1,453 works. If these unique claims had each been brought in a separate count of plaintiff's complaint, then there would have been a judgment in favor of defendants on the vast majority of plaintiff's VARA claims. The fact that plaintiff chose to plead all of his VARA claims in one count should not dictate who is determined to be the prevailing party for purposes of awarding costs under § 505. The court also notes that, unlike in the context of civil rights cases where the plaintiff is treated more favorably than the defendant and need not prevail on every single claim to be considered the prevailing party, the parties in a copyright action are supposed to be treated equally for purposes of § 505. See Fogerty, 510 U.S. at 534. When determining who is the prevailing party under that provision, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." Id.

The reality of this case is that both parties prevailed in some significant aspects, and both parties lost in some significant aspects, such that it is difficult to declare one clear winner.[5] Plaintiff prevailed by receiving a judgment in his favor, whereas defendants prevailed by successfully defending against most of plaintiff's VARA claims and the enormous amount of damages he sought. Under these circumstances, the court has determined, in its discretion, that there is no prevailing party entitled to attorney's fees and costs under § 505.[6] Accordingly, defendant's motion for attorney's fees and expenses, as well as plaintiff's request for the same, are both denied, and each party will bear their own costs.

Date: 6/14/2018

ENTER:

_____
FREDERICK J. KAPALA

District Judge

---

[5] Plaintiff's apparent dissatisfaction with the judgment, as reflected above in his various requests for post-judgment relief, shows that even he does not believe he prevailed on all aspects of his case. Although this is certainly not dispositive of the issue, it is telling.

[6] In the event that the court had to declare only one party as the prevailing party in this case, it is not clear who that would be, but that is irrelevant. No matter which party would be considered the prevailing party under those circumstances, the court still would exercise its discretion under § 505 and decline to award that party attorney's fees and costs. Put another way, even if the court had declared plaintiff as the prevailing party, that still would not have changed the outcome of the fee request under the circumstances of this case.

**App. 65**